## A06A1716. MICHAEL v. THE STATE.

(635 SE2d 790)

BLACKBURN, Presiding Judge.

A jury found Heather Elizabeth Michael guilty on two counts of bringing stolen property to Georgia, two counts of eluding an officer, and one count of possessing marijuana. She appeals, challenging among other things the sufficiency of the evidence and the giving of various jury charges. We hold (a) the evidence supported a finding that Heather was a party to or co-conspirator in the crimes and (b) she requested the very jury charges she now challenges. Accordingly, we affirm.

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*.[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*.[2]

So viewed, the evidence shows that for more than a week, 18-year-old Heather discussed with her boyfriend and another young couple the possibility of leaving their Ohio residences and traveling to Florida to visit Heather's relatives, after which they would go to Texas to establish new residences. Following a lengthy discussion of the trip on a Sunday at the end of the week, all in the group decided to go.

Because no one owned a car or had substantial assets, the group discussed obtaining a car without having to buy one. Eventually, the other couple and Heather's boyfriend stole a truck (in which the keys had been left) late that Sunday night. When Heather first saw this truck, she knew that she had never seen this truck before and she therefore suspected it was stolen, especially in light of her boyfriend's vague statements as to its origin. She pointedly did not ask further where it came from.

The intent of the trip took on a menacing feature. During the week leading up to that Sunday, Heather's boyfriend stole a .45 caliber handgun from an acquaintance and then gave a 9 millimeter handgun and a BB handgun he already owned to Heather. The other male also owned a BB handgun that, similar to Heather's, appeared very similar to a real handgun, which BB handgun the other female took into her possession. All four guns were taken on the trip, with the boyfriend placing the 9 millimeter gun and Heather placing the two

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

BB handguns in a blue duffel bag, in which Heather carried other personal items. The blue bag also contained two ski masks. Either before or early on in the trip, the boyfriend repeatedly assured Heather "that I had your back if we got pulled over[, t]hat I would not let you go to jail." The boyfriend, who was the primary driver during the trip, kept the stolen .45 handgun uncovered on the seat next to him as he drove. Heather rode at least some of the time in the front seat with the gun between her and the boyfriend.

The group left Ohio in the early hours of Monday morning, traveling south toward Florida. Before leaving Ohio, they stopped at a gas station, where the other female pumped gas into the truck and then jumped into the front seat, with the boyfriend driving the truck off without paying for the gas. They managed to escape from a nearby pursuing police car. When the group arrived in Georgia, Heather got in the front seat, and the boyfriend stopped at another service station, again driving off without paying after the other female pumped gas and jumped into the back seat of the truck's cab.

Along the way, the other female shoplifted some food items from a store, which the group shared amongst themselves. The other male shared his marijuana with the group members, which they each smoked on three or four occasions; the plastic baggie containing the marijuana remained in the glove compartment when not in use.

As the truck was traveling on the interstate through Houston County, Georgia, with the boyfriend driving and Heather in the front passenger seat, two police officers were monitoring traffic on the interstate when one officer discerned that the truck in question was traveling at an excessive rate of speed. The truck sped up, and the officer pulled out, soon activating his blue lights. The truck took the first exit off the freeway and accelerated to speeds exceeding 100 mph on local roads (with posted limits of 55 mph) in an attempt to elude the officer. The truck also ran a red light, endangering a crossing vehicle that was approaching the intersection. The second officer joined the pursuit, and a third officer heard the radio calls and also came to assist. Heather made no effort to dissuade her boyfriend from the attempts to elude police.

The truck eventually crashed into a pole, injuring the other male. The boyfriend and the other couple exited the truck, with Heather remaining in her front passenger seat. Holding a gun on the group, the first officer persuaded the three outside the vehicle to lie down, and the second officer unsuccessfully attempted to open the damaged passenger door to have Heather exit the vehicle. The first officer left the three to obtain a first aid kit while the second officer was walking around the back of the truck to access the driver's door. During this short interval, the boyfriend opened the driver's door and retrieved the stolen .45 handgun lying loose on the floorboard while Heather

observed from only a few feet away in the front seat. Heather made no attempt to hinder him or to warn police.

When the second officer came around the vehicle and demanded that the boyfriend show his hands, the boyfriend pulled the .45 handgun from behind the other male's back and shot the officer, causing the officer to drop his service revolver and shattering the bone in the officer's arm. The injured officer rolled out of the way, and an intense gun battle ensued between the boyfriend and the other two officers, with the boyfriend even using the fallen officer's service revolver when his own handgun ran out of ammunition. The officers eventually subdued the boyfriend and arrested the foursome. Heather lied to police about several aspects of the trip and later referred to the events as "we just had fun for a little min[ute]."

All four were charged with twenty criminal counts, including four counts of aggravated assault on an officer, two counts of criminal damage to property, two counts of bringing stolen property to Georgia, six counts of possessing a firearm during an aggravated assault, one count of theft by taking the officer's service revolver, one count of possessing marijuana, two counts of eluding an officer, one count of reckless driving, and one count of speeding. The other couple pled guilty to one count of bringing a stolen vehicle into Georgia and testified at trial. The boyfriend pled guilty to all counts and also testified. A jury found Heather guilty on the two counts of bringing stolen property (the truck and the .45 handgun) into Georgia, on the two counts of attempting to elude an officer (by exceeding the speed limit by over 30 mph and by running a red light), and on the marijuana possession count, acquitting her of all other charges. Following the denial of her motion for new trial, Heather appeals.

1. Heather complains that no evidence tied her to the criminal deeds of her compatriots. However, the above evidence amply showed that Heather was a party if not conspirator to bringing the stolen truck and handgun to Georgia, to the attempts to elude police by exceeding speed limits by more than 30 mph and by running a red light that endangered others, and to the possession of marijuana. A person is a party to a crime if she intentionally aids or abets in the commission of the crime or intentionally advises, encourages, or counsels another to commit the crime.[3] "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct

---

[3] OCGA § 16-2-20 (b).

before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *Peppers v. State*.[4]

Moreover, "if the State presents sufficient evidence that the actors were involved in a conspiracy, i.e., the individuals had associated themselves together in a common design to do an unlawful act, any act done in pursuance of that association by any one of the associates would, in legal contemplation, be the act of each of them." (Punctuation omitted.) *Peppers*, supra, 242 Ga. App. at 417-418 (1). "A conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." (Punctuation omitted.) *Mangum v. State*.[5]

Here, the evidence amply supported a finding that Heather's presence, companionship, and conduct before and after the offenses in question reflected her participation in the offenses and also reflected her association with the other members of the group in a common design to do the unlawful acts. Such evidence included the lengthy discussion leading up to the trip to visit her Florida relatives, with Heather discussing with her boyfriend what would happen if they were apprehended by police and with the boyfriend giving her a handgun after he stole a new gun. Her packing of two of the guns in the blue duffel bag with her personal items and the ski masks, her suspicion that the mystery truck was stolen, her refusing to ask questions about its origin, her viewing of the stolen gun on the seat of the truck while they were driving, her observation of the gas drive-offs, her eating of the stolen food items, her smoking the shared marijuana repeatedly and then sitting next to the glove compartment where the marijuana lay, her silence during the police pursuits, her observation of her boyfriend retrieving the stolen handgun from the floorboard just prior to assaulting police, her decision not to hinder her boyfriend or to warn police, her lying to police to cover up the matter, and her later reference to the entire affair as having "fun for a minute," showed her complete participation in, encouragement of, and acquiescence in the criminal conspiracy and its criminal acts and consequences.

2. Heather argues that the indictment alleged that she directly committed the offenses and did not specify that she was only a party to or co-conspirator in the criminal acts. She contends that therefore the court could not instruct the jury on such nor could she be convicted of being a party to or co-conspirator in the offenses. However, "[i]t has been repeatedly held that a conspiracy may be proven and a jury

---

[4] *Peppers v. State*, 242 Ga. App. 416, 417 (1) (530 SE2d 34) (2000).

[5] *Mangum v. State*, 274 Ga. 573, 578 (3) (c) (555 SE2d 451) (2001).

charge may be given on conspiracy and parties to a crime even though a defendant is not indicted under those theories." (Punctuation omitted.) *Mangum,* supra, 274 Ga. at 578 (3) (d). See *Hart v. State.*[6] This enumeration fails.

3. Heather contends that no evidence showed (a) that the substance found in the glove compartment of the truck was marijuana nor (b) that she possessed it. The other male, however, testified that he and the others (including Heather) smoked the substance and that it was marijuana. Having smoked the substance repeatedly and with it only inches away from her in the glove compartment (as found by the police at the crime scene), Heather could be found to have both the power and intention at a given time to exercise dominion or control over the marijuana and therefore to have constructively and jointly possessed it with the other male in Houston County. See *State v. Lewis.*[7]

4. In five enumerations of error, Heather argues that the trial court erred in giving certain instructions on inferences, on the jury's ability to believe or disbelieve testimony, on impeachment of witnesses, on parties to a crime, on accomplices, and on the possession of marijuana. However, each of these complained-of instructions was taken virtually verbatim from a corresponding written jury charge submitted and requested by Heather. "An appellant is estopped to urge error in the giving of a charge which he requested." *Bryant v. State.*[8] See *DeLoach v. State*[9] ("[t]he act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal"); *Roulain v. Martin*[10] (defendant "is estopped to contend that the trial court erred in giving any charge which was in accordance with his own request"); *Morton v. State.*[11] Accordingly, these enumerations are all waived.

5. In her final enumeration, Heather contends that the two counts of eluding an officer should have merged at sentencing. Citing *Kemper v. State,*[12] she argues that the evidence used to prove the first eluding count is "used up" because the same facts were used to prove both crimes. We review this matter de novo. *Croft v. State.*[13]

" 'The State does not use up all the evidence in establishing the first crime where the crimes are separate and sequential.' " *Croft,*

[6] *Hart v. State,* 185 Ga. App. 141 (1) (363 SE2d 599) (1987).

[7] *State v. Lewis,* 249 Ga. 565, 567 (292 SE2d 667) (1982).

[8] *Bryant v. State,* 271 Ga. 99, 101 (4) (515 SE2d 836) (1999).

[9] *DeLoach v. State,* 272 Ga. 890, 892 (2) (536 SE2d 153) (2000).

[10] *Roulain v. Martin,* 266 Ga. 353, 354 (2) (466 SE2d 837) (1996).

[11] *Morton v. State,* 276 Ga. App. 421, 423-424 (3) (623 SE2d 239) (2005).

[12] *Kemper v. State,* 251 Ga. App. 665, 666-667 (2) (b) (555 SE2d 40) (2001).

[13] *Croft v. State,* 278 Ga. App. 107, 108 (2) (628 SE2d 144) (2006).

supra, 278 Ga. App. at 109 (2). See *Pless v. State*[14] ("[w]here the evidence shows that one crime was complete before the other occurred, the crimes do not factually merge"). Here, the first count of eluding an officer by exceeding the posted speed limit by at least 30 mph occurred as the officer was chasing the truck down the local road and clocked the vehicle as exceeding 100 mph in a 55-mph zone. This crime was therefore separate and complete prior to the truck's driver running the red light and endangering the crossing vehicle in his efforts to elude police, which was the basis for the second count of eluding an officer. Accordingly, the crimes did not factually merge.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED AUGUST 8, 2006 —
RECONSIDERATION DENIED AUGUST 25, 2006 —

*Ford & Josey, Michael C. Ford*, for appellant.
*Kelly R. Burke, District Attorney, Timothy M. Marlow, Assistant District Attorney*, for appellee.

---

[14] *Pless v. State*, 279 Ga. App. 798 (6) (633 SE2d 340) (2006).