S07G1640. BLY v. THE STATE.

(660 SE2d 713)

HUNSTEIN, Presiding Justice.

We granted certiorari to consider whether the Court of Appeals erred by upholding the admission of opinion testimony by a witness who did not personally observe the events that formed the basis for the criminal charges brought against appellant Nathaniel Bly. *Bly v. State*, 286 Ga. App. 43 (3) (648 SE2d 446) (2007). For the reasons that follow we hold that the admission of the witness's testimony constituted reversible error.

Bly was convicted of aggravated assault on a police officer and felony obstruction arising out of a traffic stop conducted by Eatonton Police Officer Noel Hawk[1] around 1:30 a.m. on September 21, 2003. The trial transcript reveals that Hawk, after observing a Ford truck being driven consistently a few inches over the center line, activated his lights based on his suspicion that the driver, Bly, was under the influence.[2] Bly promptly pulled over beside the courthouse. The driver of another police car, Officer Willie Brinkley, who just happened to be in the area, pulled up behind Hawk to provide support. Conflicting accounts were given at trial by Hawk and Bly regarding what occurred during the stop. Hawk testified that he asked Bly for his license and proof of insurance and when Bly asked why he had

---

[1] Bly was additionally charged with disorderly conduct and driving on the wrong side of the road, but the jury acquitted him on these charges.

[2] In the half hour preceding the traffic stop, Officer Hawk had pulled over five motorists suspecting they were driving under the influence but none were.

been stopped, Hawk answered it was "for driving over the center line back there."[3] Bly then cursed him and said the officer was lying; Hawk told Bly not to curse him and repeated his request for Bly's driver's license and insurance, but Bly cursed him again. At this point, Brinkley was on the other side of the truck ("between the back tire and the passenger door") when Hawk testified he "reached and opened [Bly's] truck door and told [Bly] to get out. At that time he kicked me. He had laid — he just laid over the seat, like this, and just took his left leg and kicked me." Hawk testified that he said to Brinkley, "he just kicked me." Hawk got his pepper spray from his duty belt in his right hand and saw Bly fumbling towards something in the floorboard of the passenger side of the truck. Using his left hand, Hawk "reached in and grabbed [Bly] by his left arm." As Hawk "made contact, to snatch him up, I felt a blow into my arm." Feeling pain and not knowing what had happened, Hawk used the pepper spray on Bly and backed out of the vehicle, drawing his service revolver and baton. Hawk "hollered" to Brinkley that he had been stabbed and Brinkley started around the front of the truck. Hawk "had already drawn [his] weapon" when Brinkley "immediately started around the truck."

Bly testified that after he pulled over in response to the blue lights, he turned on an interior light in his truck and placed his hands on top of the steering wheel. When Hawk arrived, Bly asked why he had been stopped but Hawk simply told Bly to give him Bly's license and insurance card. When Bly asked again, Hawk said to give him the documents "before he snatched my little ass out of the truck and bounce[d] it off the cement." Bly told Hawk his insurance card was in the dash compartment and got Hawk's permission to look there for the card. As Bly leaned across the front seat, the truck door opened and Bly "felt something nudging my leg" and looked to see an arm coming up the seat between his legs towards his crotch. Bly testified he did not see Hawk, whom he thought had circled around to the passenger side to observe him for security purposes while he opened the glove box. Bly seized a pair of wire snips on the seat and hit the arm while it was still between Bly's legs. The arm recoiled and then Bly was sprayed in the face with pepper spray and ordered out of the truck. Bly complied and Brinkley handcuffed him and placed him in his police car. It is uncontroverted that Bly did not struggle with or

---

[3] Hawk admitted at trial that his response could have caused "some confusion" in light of the fact that Bly had not been driving across the center line for some distance when the officer activated his blue lights.

offer any resistance to Brinkley. Bly acknowledged cursing Hawk because he "was right ill with me," but denied making any move towards him.

The only other witness to the traffic stop was Brinkley. He testified that he "wasn't there at the beginning" of the stop. He heard Bly yell curse words at Hawk and Hawk ask Bly to step out of the truck. "And somehow or another, [Bly] leaned over [the truck's front seat] and when he come out — I was walking around back around to the driver's side where Officer Hawk was. Officer Hawk said that he stabbed me. And I looked and blood was gushing out from one of his arms." Brinkley testified on cross-examination that he "didn't see anything"; did not see Bly kick Hawk; did not hear Hawk say he had been kicked; heard Hawk "hollering and yelling" to Bly to step out of the truck; and acknowledged that the "first thing" he saw when he stepped around to the driver's side of the truck was Hawk with his service revolver pulled.

After producing the testimony of Officer Eldredge, who arrived on the scene after the events occurred, and the medical doctor who tended to Hawk's injury, the State called as its final witness Special Agent Ricky Harvey, a 24-year veteran of the Georgia Bureau of Investigation. Harvey testified that he was called in by the chief of the Eatonton Police Department to investigate the assault on Hawk "to find out what happened. Make sure the department did what they were supposed to do." After initially testifying that the prior statements made to him by Officers Hawk, Brinkley and Eldredge during his investigation were consistent with their trial testimony,[4] and answering repeated questions posed by the prosecutor[5] regarding appellant's exercise of his right to remain silent,[6] Harvey was asked, "you've heard the evidence in this case and you sat here through all the testimony. From your training and experience, do you think

---

[4] Because the veracity of Officers Brinkley and Eldredge was not placed in issue at trial, Harvey's testimony constituted improper bolstering. See *Hunt v. State*, 279 Ga. 3 (4) (a) (608 SE2d 616) (2005); *Woodard v. State*, 269 Ga. 317 (2) (496 SE2d 896) (1998).

[5] The transcript reveals the following exchange between the prosecutor and Harvey:
Q: And did you ever try to interview Mr. Bly about what happened that night?
A: Yes, sir.
Q: Did he explain to you what happened, as far as, what he thinks happened?
A: I went out to the jail to interview Mr. Bly at 5:55 a.m. I advised Mr. Bly of his rights under the Miranda decision and Mr. Bly advised me that he did not have anything to say, and that he wanted an attorney.
Q: He didn't say anything about any arm being put on his leg, or anything like that?
A: No, sir.
Q: He just didn't want to talk to you. He wanted an attorney?
A: Yes.

[6] As the Court of Appeals correctly pointed out, "this was an error of constitutional dimension in that the State was commenting improperly on Bly's constitutional right to silence. [Cit.]" *Bly v. State*, supra, 286 Ga. App. at 47 (4) (b).

Officer Hawk —." When appellant's counsel interposed an objection, the trial court stated it had not heard the question and instructed the prosecutor to repeat the question in its entirety. The prosecutor then asked Harvey,

> [b]ased on your experience and training, and all the testimony that you heard in court today about what happened on that street, do you think Officer Hawk acted appropriately as a police officer in the line of duty?[7]

The trial court ruled that it would "allow him to answer it because of his training and experience." Harvey answered the question by stating, "[y]es, sir."

1. The Court of Appeals found that the admission of Harvey's testimony was proper, relying on the rule set forth in *McMichen v. Moattar*, 221 Ga. App. 230 (2) (470 SE2d 800) (1996) and *In the Interest of Smith*, 143 Ga. App. 358 (2) (238 SE2d 725) (1977), that when the subject matter of an inquiry " 'relates to numerous facts *perceived by the senses*' " that cannot be adequately described and presented to the jury, " 'the witness may state his impressions drawn from, and opinions based upon, the facts and circumstances *observed by him* or the effect which they produced upon his mind.' " (Emphasis supplied.) *McMichen*, supra at 232 (2). However, as both *McMichen* and *Smith* clearly reflect, this rule applies to witnesses who personally observed the events to which they are testifying and, essentially, authorizes such eyewitnesses to present a "shorthand" impression of those events in situations where language fails to adequately convey their observations to the jury with the " 'same force and clearness as they appeared to the witness.' " Id. Hence, in *McMichen*, a lay eyewitness to a pedestrian-automobile collision was allowed to give his conclusion whether he thought the driver could have avoided the collision and in *Smith*, a caseworker in a termination of parental rights proceeding who had personally observed the mother and minor children in their home was allowed to testify about their physical and mental condition.

In this case, it is uncontroverted that Harvey did not personally witness any part of the traffic stop. His testimony was not a "shorthand" rendition of fact because it was not based on "facts and circumstances observed by him." *McMichen*, supra, 221 Ga. App. at

---

[7] We note that the question to Harvey did not ask him to state the standard of conduct of a police officer during a traffic stop. Nor was it presented to Harvey in a form asking him to assume that Hawk's version of the events was correct and, if so, whether those actions comported with the standard of conduct of a police officer during a traffic stop.

232 (2). Rather, the challenged testimony constituted Harvey's opinion, which was based upon his second-hand assessment of the same evidence presented by the State to the jury.[8] The rule set forth in the second division in *McMichen* and in *Smith* was thus inapplicable to Harvey.

Contrary to the State's argument, the cases on which it relies do not support an opposite conclusion inasmuch as they involved opinions based on matters personally observed by the testifying officer. E.g., *Marshall v. State*, 270 Ga. App. 663 (607 SE2d 258) (2004) (experienced officers involved in arrest could give opinion that packaging of marijuana discovered in car was consistent with preparing it for sale); *Grant v. State*, 195 Ga. App. 463 (1) (393 SE2d 737) (1990) (officer, based on professional experience and personal observation of intoxicated driver, could testify whether driver was less safe to drive); *Owens v. State*, 161 Ga. App. 184 (288 SE2d 262) (1982) (officer who personally interrogated defendant authorized to give opinion whether statement was knowingly and voluntarily made). Equally distinguishable are cases involving expert testimony by officers regarding their analyses of physical evidence, e.g., *Williams v. State*, 279 Ga. 731 (2) (620 SE2d 816) (2005) (blood spatter); *Bacon v. State*, 178 Ga. App. 546 (2) (343 SE2d 774) (1986) (accident reconstruction), because Harvey's opinion as to the propriety of Hawk's behavior was derived solely from his interviews with the witnesses for the State and the transcript establishes that his limited examination of some collateral aspects of the physical scene could have played no role in forming that opinion.[9] See *Purcell v. Kelley*, 286 Ga. App. 117 (1) (648 SE2d 454) (2007) (harmful error to allow investigating officer to opine that defendant ran red light where officer's testimony was based solely on witness statements taken at scene, rather than on examination of physical evidence).

We therefore hold that the Court of Appeals erred by affirming the admission of Harvey's testimony on this basis.

2. The State argues that Harvey's testimony was nevertheless admissible under the rule set forth in another division in *McMichen*, namely, as expert opinion on an issue where the conclusion "is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the layman." (Citations and punctuation omitted.) Id., 221 Ga. App. at 230-231 (1). The trial court

---

[8] Although the State stresses that Harvey was a "disinterested observer," it was the jurors' role, as disinterested fact finders, to assess the evidence.

[9] The transcript establishes that Harvey never conducted any examination of the truck where the stabbing actually occurred. According to Harvey, he only photographed the site where the truck had been stopped, diagramed the location of blood spots on the ground there and ordered tests conducted on the wire snips.

never explicitly qualified Harvey as an expert. Compare *Williams*, supra, 279 Ga. at 732 (2). However, arguably, the trial court implicitly accepted Harvey as an expert when it overruled Bly's objection to the question posed Harvey. See *Stewart v. State*, 246 Ga. 70 (4) (a) (268 SE2d 906) (1980). We agree with Bly that the question improperly asked for a conclusion and thus find the trial court erred by denying his objection.

Opinion testimony is allowed where " 'the nature of the question is such that the factors leading to a conclusion are not known to the common or average [person], but are among those things shrouded in the mystery of professional skill or knowledge.' . . . [Cit.]" *Fordham v. State*, 254 Ga. 59-60 (325 SE2d 755) (1985). However, where jurors can

> "take the same elements and constituent factors which guide the expert to his conclusions and from them alone make an equally intelligent judgment of their own, independently of the opinion of others, then undoubtedly this should be done. . . . [Cit.]"

Id. at 59. Here, even assuming, arguendo, that expert testimony was needed to enable an average juror to understand the standard of conduct for a police officer during a traffic stop, no evidence was introduced at Bly's trial regarding the "elements and constituent factors" that "guide[d Harvey] to his conclusions."[10] Id. Moreover, whether or not Hawk, according to his version of events, "acted appropriately as a police officer in the line of duty," as Harvey was asked, was a matter regarding which the jurors could have made "an equally intelligent judgment of their own, independently of the opinion of [Harvey]." Id. See also *McCartney v. State*, 262 Ga. 156 (1) (414 SE2d 227) (1992) (error to admit expert testimony where jurors had ability to reach conclusion themselves). Accordingly, we find that Harvey's testimony was not admissible as expert opinion on an issue beyond the ken of the average layperson.

3. The State argues that the trial court's ruling, even if error, was not harmful. We do not agree. Resolution of the charges against Bly

---

[10] The only testimony from Harvey that even intimated any standard of conduct was adduced after he gave the challenged testimony. According to the transcript, Harvey on re-cross-examination answered the questions "wouldn't it be prudent for Mr. Hawk to wait until Mr. Brinkley arrived to assist him before he opened" the truck door and "was it appropriate for [Hawk] to pull a service revolver at that time" even if "there's pepper spray in the area and . . . he's made no movement to remove himself from the truck"; and that on redirect Harvey answered affirmatively two questions posed by the prosecutor: "[t]hrough your training and experience have you seen situations in the past where officers were injured during situations like this" and "[h]ow about killed?"

pivoted exclusively on the credibility of Hawk and Bly. On cross-examination the credibility of both men, the victim as well as the accused, was attacked. No other evidence fully precluded or corroborated either man's version of the events. The only other evidence relevant to this ultimate issue of credibility came from Harvey. The 24-year veteran of the GBI was allowed to inform the jury that, after interviewing the officers and hearing their virtually-identical trial testimony, he thought Hawk had acted appropriately.

The credibility of a witness, including a victim witness, is a matter for the jury's determination under proper instruction from the court. OCGA § 24-9-80. It is well established that

> a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury.

(Citations and punctuation omitted.) *Manzano v. State*, 282 Ga. 557, 560 (3) (b) (651 SE2d 661) (2007). See also *Turtle v. State*, 271 Ga. 440 (2) (520 SE2d 211) (1999). Although Harvey did not directly state that he believed Hawk to have been truthful, his conclusion that Hawk acted appropriately was necessarily predicated upon Harvey's belief in the veracity of Hawk's statements to him as repeated by Hawk at trial. When reviewed within its context to determine whether it affected the trial's outcome, e.g., *Branesky v. State*, 262 Ga. App. 33 (3) (a) (584 SE2d 669) (2003), we cannot conclude that the bolstering question to Harvey was harmless. Unlike *Manzano*, supra, the question to Harvey was no mere "rhetorical device" but instead was designed to assure the jury that an experienced and objective GBI agent had already vetted Hawk's statement and found his behavior appropriate. Unlike the expert in *Alattawy v. State*, 289 Ga. App. 570, 572 (1) (657 SE2d 552) (2008), whose single improper bolstering question occurred within the expert's otherwise appropriate discussion of the behavior of sexually abused children, Harvey never retreated from the bolstering testimony and there was no other disinterested testimony presented at trial from which the jury could reach an independent conclusion about Hawk's credibility. The testimony was deliberate, compare *Branesky*, supra, and was not ameliorated by any curative instructions. Compare *Cortez v. State*, 286 Ga. App. 170 (2) (648 SE2d 488) (2007) (curative instructions and polling of jury constituted sufficient remedial measures to ensure fair trial after police officer improperly bolstered victim's testimony).

We find no merit in the State's argument that Bly's testimony alone was sufficient to support his convictions. If the jury believed

Bly's testimony that Hawk had not ordered him out of the truck but instead had indicated that Bly could get his insurance card out of his dash; that Hawk waited until Bly was stretched across the front seat of the truck to open the door and reach inside without warning or justification with his left arm (leaving most of his body blocked from view by the door frame); and that Bly believed Hawk was on the passenger side of the truck, as was Brinkley, a jury might have believed that Bly's reflexive action of striking, with the nearest instrument available, a hand groping towards his crotch, was not an aggravated assault on a police officer or the intentional obstruction of a legal arrest but rather was a reasonable use of the amount of force necessary to defend Bly from the attempted assault on his person. OCGA § 16-3-21 (a).

In conclusion, Harvey's testimony that Hawk acted appropriately improperly bolstered the credibility of Hawk, the victim of the offenses for which Bly was convicted.

> Clearly, given the expert witness's knowledge and training, testimony that the expert believes the victim is "particularly compelling to . . . jurors. [Thus, i]t is for this reason that our courts have consistently held that expert witnesses may not testify regarding truthfulness or credibility. [Cits.]" [Cit.] And we have recognized that this testimony may be given particular weight when the credibility of the witness is a key issue in the case. . . . [S]uch error [can] not be deemed harmless [where] the evidence of guilt [i]s not overwhelming, *and [where] the credibility of the witnesses [i]s a key issue in the case.*

(Emphasis in original.) *Patterson v. State*, 278 Ga. App. 168, 172 (628 SE2d 618) (2006). It follows that the trial court in this case erred by admitting Harvey's testimony. Considering the critical nature of Harvey's testimony and its potential to influence the jury, as well as the nature of the evidence in this case, we are unable to conclude "that it is highly probable that the error did not contribute to the jury's verdict." *Johnson v. State*, 238 Ga. 59, 61-62 (230 SE2d 869) (1976). See also *McCartney v. State*, supra, 262 Ga. at 159 (1). Therefore, because Bly is entitled to a new trial on this basis, we reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 21, 2008.

*James R. McNiff, Barry G. Irwin*, for appellant.

*Frederick D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney*, for appellee.