**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten
days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2017**

# In the Court of Appeals of Georgia

A16A2229. GIBBS v. THE STATE.

McFADDEN, Presiding Judge.

Kevin S. Gibbs stands convicted of one count of aggravated assault on a peace officer, two counts of fleeing or attempting to elude a police officer, and one count of reckless driving. This is his second appeal. On the first, we remanded and directed that the trial court discharge his duty — imposed by the invocation of the general grounds in Gibbs's motion for new trial — to declare not merely whether the evidence was sufficient to sustain the jury's verdict, but whether his mind and conscience approved the verdict as rendered. *Gibbs v. State*, 334 Ga. App. XXVI (Oct. 6, 2015) (unpublished). Now that the trial court has discharged that duty and reaffirmed denial of the motion for new trial, we address the merits of Gibbs's other arguments.

Gibbs contends that his trial counsel was ineffective, but he has failed to show deficient performance. He contends that the trial court erred in admitting certain expert testimony, but that evidence did not invade the province of the jury. Finally he contends that certain of his offenses should have merged, and we agree. Our analysis of the merger issue requires us to disapprove one of our published opinions because it is irreconcilable with a subsequent opinion of our Supreme Court.

1. *Facts.*

In our earlier opinion, we found that the evidence showed that

at around 5:00 p.m. on February 12, 2013, Smyrna police officer Daniel Stuckey, while on uniformed patrol, drove to Jonquil Park after receiving information that two suspects, whom he had previously arrested on drug charges, were possibly, again, engaging in drug transactions there. As his patrol vehicle entered the park, Officer Stuckey saw that the only vehicle in the parking lot was a small gray Hyundai, which had backed into a parking space and was occupied by several individuals. Deciding that he would try to speak with the vehicle's occupants, Officer Stuckey parked a few feet away, but at an angle that did not impede the Hyundai, and exited his patrol car.

As Officer Stuckey approached, Gibbs, the vehicle's driver, stepped on the accelerator, and the Hyundai briefly lurched forward, striking Officer Stuckey's legs. Despite being struck, Officer Stuckey maintained his balance. He then immediately drew his weapon and

yelled at Gibbs to stop and to exit the vehicle. However, instead of complying, Gibbs began inching his vehicle toward the officer a second time. Officer Stuckey repeated his orders, but Gibbs, again, stepped on the accelerator. As Gibbs's vehicle barreled toward him, Officer Stuckey dove out of the way while firing his weapon toward the driver-side window. The gunshot shattered the window's glass and ultimately struck Gibbs in the upper part of his chest. Nevertheless, despite being shot, Gibbs did not stop, or even slow down, but rather sped away from the park.

After determining that he was not seriously injured, Officer Stuckey radioed dispatch about the incident, activated his patrol car's emergency lights, and began pursuit. Upon exiting the park, Officer Stuckey spotted Gibbs's vehicle and saw him pull over to allow his three passengers to get out before turning onto a divided four-lane road that was heavy with rush-hour traffic and wet from the rain that had started that afternoon. Once he reached the congested road, Gibbs began weaving through traffic, refusing to stop even after he rear-ended an SUV with enough force to sheer off that vehicle's driver-side rear wheel. Seconds later, Officer Stuckey caught up and performed a PIT maneuver, bumping Gibbs's vehicle and causing it to hit the raised median dividing the road and come to a halt. Other officers quickly arrived on the scene, and one of those officers called an ambulance, which transported Gibbs to a local hospital where doctors treated his gunshot wound. Additionally, while still at the hospital, another Smyrna police officer informed Gibbs that he was under arrest.

Thereafter, the [s]tate charged Gibbs, via indictment, with one count of aggravated assault, one count of obstruction of a police officer, two counts of fleeing or attempting to elude a police officer, and one count of reckless driving. Gibbs was tried, and at the conclusion of his trial, the jury convicted him on all counts in the indictment.

*Gibbs v. State*, 334 Ga. App. XXVI (citations and footnote omitted).

2. *Effective assistance of counsel.*

Gibbs argues that he received ineffective assistance of trial counsel in two respects: failure to impeach Officer Stuckey with a prior inconsistent statement and failure to properly object to admission of a medical record that placed his character in issue. Absent the combined effect of those trial-counsel errors, he argues, the outcome of the trial would have been different.

To establish ineffective assistance of counsel, Gibbs must satisfy a two-prong test. He

> must show [both] that trial counsel's performance [was deficient in that it] fell below a reasonable standard of conduct and that [it was prejudicial because] there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance. If [Gibbs] fails to [prove] either prong of the [two-part] test, this relieves the reviewing court of the need to address the other prong.

4

*Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citations and punctuation omitted). Gibbs's arguments fail the deficient-performance prong. So we do not address prejudice.

(a) *Impeachment*.

Gibbs argues that trial counsel was ineffective for failing to impeach Officer Stuckey with statements he made in a police-department interview shortly after the incident that were inconsistent with his trial testimony. At trial, Officer Stuckey testified that he drew his weapon after Gibbs hit him with his vehicle the first time. But in the police-department interview, he never mentioned that Gibbs hit him twice. This inconsistency, Gibbs argues, could have persuaded the jury that Officer Stuckey wrongfully drew his gun immediately upon exiting his car — when his encounter with Gibbs was still only a first-tier encounter — and so that Gibbs had the right to resist or flee and to disregard Officer Stuckey's orders to stop. He also argues that this alleged impeachment evidence would have aided the jury in judging Officer Stuckey's credibility.

We see no material contradiction. In his police-department interview, Officer Stuckey testified that, as soon as he got out of his car, Gibbs drove toward him. Officer Stuckey explained that he "immediately drew on him because he was coming

at [Officer Stuckey] . . . ." At trial, Officer Stuckey testified that once he got out of his car, Gibbs's car "rapidly accelerated toward [him]." He testified that Gibbs's car hit him, and at that moment he "realized [his] weapon was drawn in [his] hand." In describing this first contact, Officer Stuckey testified that he "kind of consider[ed it] lucky, [that Gibbs] stopped at about the same time [he] was moving backwards, where [Gibbs] came into contact with [Officer Stuckey]." In other words, the vehicle braked as it made contact with Officer Stuckey's body and the contact was minimal. In both his trial testimony and in his police-department interview, Officer Stuckey said that he drew his gun when Gibbs immediately began driving toward him as soon as he exited the police car.

It is true that in his police-department interview Officer Stuckey did not mention contact. But "[p]roof of a different but not inconsistent statement" does not raise an impeachment issue. *Hopkins v. State*, 167 Ga. App. 811, 814 (1) (307 SE2d 707) (1983). That Officer Stuckey's trial testimony "merely included additional facts demonstrates no impeaching inconsistency with [his police-department interview]. As the absence of the additional facts in a prior statement given by [Officer Stuckey] fails to amount to a contradiction of [his] trial testimony, there could be no impeachment. . . ." *Weathers v. State*, 198 Ga. App. 871 (2) (403 SE2d 449) (1991)

6

(citation and punctuation omitted). Since Officer Stuckey's police-department interview was not impeaching simply because it omitted the fact of the initial contact, trial counsel's performance was not deficient for failing to use it to impeach Officer Stuckey.

Further, trial counsel did pursue alleged inconsistencies in Officer Stuckey's testimony on cross-examination, even getting him to concede that he had a "loss of memory" as to certain things that occurred that day. So although Gibbs argues that

> his trial counsel was deficient in failing to pursue specific avenues of impeachment using [Officer Stuckey's police-department interview], the degree to which an attorney chooses to cross-examine witnesses and the manner in which to attack their credibility fall within the ambit of trial tactics. . . . [W]e are unpersuaded that trial counsel's failure to use the avenues of impeachment suggested by [Gibbs] fell outside the broad range of professional assistance.

*Garrett v. State*, 285 Ga. App. 282, 286 (5) (b) (645 SE2d 718) (2007) (citation and punctuation omitted).

(b) *Medical record*.

Gibbs argues that trial counsel failed to properly object to the admission of a medical record that placed Gibbs's character in issue. Even if Gibbs preserved this issue for our review, he has not shown deficient performance because the objection

7

still would have been without merit had counsel supported it with the arguments he now makes on appeal.

At trial, a nurse testified that when Gibbs was admitted to the hospital, he told her that he had smoked marijuana that day. Counsel objected — not because the testimony improperly placed Gibbs's character in issue but because the nurse had not given Gibbs *Miranda* warnings. *Miranda*, of course, is not applicable to conversations between private citizens. *Mitchell v. State*, 282 Ga. 416, 421 (6) (f) (651 SE2d 49) (2007). So the trial court overruled the objection. Now Gibbs argues that trial counsel was ineffective for failing to base his objection on OCGA § 24-4-402 (relevance) and OCGA § 24-4-404 (b) (other acts). He also argues that trial counsel should have objected on the ground that the testimony implicated Gibbs's protected medical records.

The nurse's testimony was not subject to an objection under OCGA § 24-4-404 (b) because it is intrinsic evidence. "[E]vidence is intrinsic to the charged offense, and thus does not fall within [OCGA § 24-4-]404 (b)'s ambit, if it (1) arose out of the same transaction or series of transactions as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably intertwined with the evidence regarding the charged offense." *Baughns v. State*, 335 Ga. App. 600, 602-603 (1)

8

(782 SE2d 494) (2016). Since the testimony was intrinsic evidence, OCGA § 24-4-404 (b) does not apply and trial counsel was not deficient for failing to object under that statute. New counsel did not question trial counsel about medical-records privacy rights or any other grounds for objecting to the nurse's testimony. Therefore they are not preserved for review. *Patel v. State*, 279 Ga. 750, 754 (c) (620 SE2d 343) (2005).

3. *Expert testimony.*

Gibbs argues that the trial court erred by allowing a police expert witness to testify that Officer Stuckey's use of force was proper and within policy. We find no error.

The trial court qualified Detective Ron Waddell of the city of Smyrna Police Department as an expert witness in the field of law enforcement procedures and the use of force in officer defense. Detective Waddell testified about the use-of-force continuum that guides police officers' interactions with citizens. He testified that an officer is able to use deadly force when he believes he or someone else is in direct jeapordy of being seriously injured or killed. The testimony about which Gibbs complains occurred when the prosecutor posed a hypothetical to Detective Waddell as follows:

Q: Hypothetical situation, you are back to being on patrol, you're not a detective anymore, let's say. . . . You approach a vehicle.
A. Right.
Q: Okay. the vehicle comes at you, what's the first thing you're going to do?
A: Hopefully I can get out of the way, but –
Q: If you can't get out of the way.
A: I've got to open fire. I have absolutely no choice but to do what I can to get that car – the driver to stop, and if that's the only option I've got, that's what I have to do.
Q: Would that fall within what you teach as a use-of-force continuum in officer defense?
A: Yes, absolutely.

This testimony is admissible because the application of the use-of-force continuum is not something with which the jurors ordinarily would be familiar. "Expert opinion testimony on issues to be decided by the jury, even the ultimate issue,[1] is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981) (citation omitted). Whether

---

[1]We cite *Smith v. State* even though it was decided under the former Evidence Code because "the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under the new Evidence Code (OCGA § 24-7-707) are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67)." *Mosby v. State*, __ Ga. __, __ (2) n. 2 (__ SE2d __) (Case No. S16A1580, decided Jan. 23, 2017) (citation omitted). But the rule about opinions on ultimate issues has changed: it has become even less favorable to Gibbs's argument. See OCGA § 24-7-704.

10

the use-of-force continuum permits a police officer to shoot at a car coming toward him is beyond the ken of the average juror. See *Samples v. City of Atlanta*, 916 F2d 1548, 1551 (11th Cir.1990).

The case upon which Gibbs primarily relies, *Bly v. State*, 283 Ga. 453 (660 SE2d 713) (2008), supports the admission of Detective Waddell's testimony in this case. In *Bly*, the trial court improperly allowed a witness to baldly testify that the officer had acted appropriately in conducting the traffic stop. So our Supreme Court reversed Bly's convictions for aggravated assault on a police officer and felony obstruction arising out of a traffic stop. The *Bly* court ruled that the witness was testifying about "a matter regarding which the jurors could have made an equally intelligent judgment of their own," not the standard of conduct for a police officer. Id. at 458 (2) (citation and punctuation omitted). The court explained that

> the question to [the witness] did not ask him to state the standard of conduct of a police officer during a traffic stop. Nor was it presented to [the witness] in a form asking him to assume that [the officer's] version of the events was correct and, if so, whether those actions comported with the standard of conduct of a police officer during a traffic stop.

Id. at 456 n. 7. In *Bly,* unlike in the case before us today, "no evidence was introduced . . . regarding the elements and constituent factors that guided [the witness] to his

conclusions." Id. at 458 (2) (citation, footnote, and punctuation omitted). The witness simply testified that, based on the officer's version of events, the officer "acted appropriately as a police officer in the line of duty." Id. (punctuation omitted). Therefore, the witness's opinion in *Bly* was not admissible as an expert opinion. Id. Here, on the other hand, Detective Waddell testified about the use-of-force continuum and answered a hypothetical, based on facts in evidence, that the use-of-force continuum would allow an officer to shoot at someone driving a vehicle toward him. He did not testify that Officer Stuckey "acted appropriately."

4. *Merger.*

Gibbs argues that the trial court should have merged his convictions for two counts of fleeing or attempting to elude a police officer because they are based on the same act of fleeing from a single police officer. We agree.

Much of the language of counts three and four is identical: both charged Gibbs with

> the offense of FLEEING OR ATTEMPTING TO ELUDE A POLICE OFFICER, OCGA § 40-6-395 (b) (5) (A), for that the said accused person, in the County of Cobb and State of Georgia, on or about the 12th day of February, 2013, being the driver of a vehicle, did willfully fail and refuse to bring his vehicle to a stop while fleeing and attempting to elude a pursuing police vehicle . . . after having been given an audible

and a visual signal to bring his vehicle to a stop by Officer Daniel Stuckey, an officer who at the time of giving such signal was in a uniform prominently displaying the officer's badge of office and the officer's vehicle was appropriately marked showing it to be an official police vehicle, contrary to the laws of said State, the good order, peace and dignity thereof.

Those counts differ in that count three specified that, while committing this act, Gibbs "did, at Spring Street at Glenroy Drive, collide with a Buick Enclave, a vehicle;" while count four specified that while committing this act, Gibbs "while fleeing in traffic conditions, to wit: wet road and heavy traffic, . . . placed the general public at risk of receiving serious injuries."

"[W]hether a course of conduct can result in multiple violations of the same statute . . . requires a determination of the 'unit of prosecution,' or the precise *act or conduct* that is being criminalized under the statute. Accordingly, the starting point must be the statute itself." *Smith v. State*, 290 Ga. 768, 773 (3) (723 SE2d 915) (2012) (citations and punctuation omitted; emphasis in original). OCGA § 40-6-395 (a) provides,

It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or

an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.

Subsection (b) (5) (A) of the statute provides that:

Any person violating the provisions of subsection (a) of this Code section who, while fleeing or attempting to elude a pursuing police vehicle or police officer: (i) Operates his or her vehicle in excess of 20 miles an hour above the posted speed limit; (ii) Strikes or collides with another vehicle or a pedestrian; (iii) Flees in traffic conditions which place the general public at risk of receiving serious injuries; (iv) Commits a violation of paragraph (5) of subsection (a) of Code Section 40-6-391; or (v) Leaves the state shall be guilty of a felony punishable by a fine of $5,000.00 or imprisonment for not less than one year nor more than five years or both.

In *Smith*, supra, the Supreme Court defined the unit of prosecution in OCGA § 40-6-395:

Based on the plain language of the statute, the act or conduct that is prohibited by OCGA § 40-6-395 is the "willful[ ] fail[ure] or refus[al] to bring [one's] vehicle to a stop or otherwise to flee or attempt to elude *a pursuing police vehicle or police officer* when given a visual or an audible signal to bring the vehicle to a stop." (Emphasis supplied.) Thus,

14

it is the act of fleeing from an individual police vehicle or police officer after being given a proper visual or audible signal to stop from that individual police vehicle or officer, and not just the act of fleeing itself, that forms the proper "unit of prosecution" under OCGA § 40-6-395.

*Smith*, 290 Ga. at 774 (3) (citations omitted; emphasis in original). So the provisions of subsection (b) (5) (A) – the basis of the language that distinguishes counts three and four – do "not create [] separate and independent offense[s] but instead fall[] within the category of other legislative directions as to punishment. . . ." *State v. Phillips*, 206 Ga. App. 421, 422 (425 SE2d 412) (1992) (citation and punctuation omitted). See also *Hinton v. State*, 297 Ga. App. 565, 566 (1) (b) (677 SE2d 752) (2009) ("OCGA § 40-6-395 (b) (5) (A) provides for enhanced felony punishment"). Because both counts three and four charged Gibbs with fleeing from Officer Stuckey after having been given a proper signal to stop from Officer Stuckey, the unit of prosecution under both counts is the same and the counts merged. See *Nolley v. State*, 335 Ga. App. 539, 547 (2) (782 SE2d 446) (2016) ("The [s]tate's indictment charging violation of one offense in two counts . . . was multiplicitous, and resulted in [defendant] being punished twice for a single offense."). Compare *Smith*, 290 Ga. at 774 (3) (finding no merger required for five counts of attempting to elude a police officer where defendant led police on a chase "after being given clear signals by five

15

separate police vehicles to stop" because unit of prosecution under OCGA § 40-6-395 was act of fleeing from an individual police vehicle or officer after being given the signal to stop by that vehicle or officer).

The state relies on *Michael v. State*, 281 Ga. App. 289 (635 SE2d 790) (2006), to support its argument that the convictions do not merge. We did hold in that case that two convictions for fleeing or attempting to elude factually did not merge because

> the first count of eluding an officer by exceeding the posted speed limit by at least 30 mph occurred as the officer was chasing the truck down the local road and clocked the vehicle as exceeding 100 mph in a 55-mph zone. This crime was therefore separate and complete prior to the truck's driver running the red light and endangering the crossing vehicle in his efforts to elude police, which was the basis for the second count of eluding an officer.

Id. at 293-294 (5). But when we decided *Michael*, we did not have the benefit of *Smith*, 290 Ga. at 768, which made clear that when determining whether a course of conduct can result in multiple violations of a single statute, the proper focus is the unit of prosecution and that the unit of prosecution under OCGA § 40-6-395 is the act of fleeing from an individual police vehicle or police officer after being given a

16

proper visual or audible signal to stop from that individual police vehicle or officer.

To the extent that *Michael*, 281 Ga. App. 289, holds otherwise, it is disapproved.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Doyle, C. J, Barnes, P. J., Ellington, P. J., Dillard, P. J., Andrews, Ray, Branch, McMillian, Rickman, Mercier, Reese, Self, and Bethel, JJ. concur. Miller, P. J., concurs in Divisions 1, 2 (a), 3, and 4, and in the judgment only as to Division 2(b).*