**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 7, 2025**

# In the Court of Appeals of Georgia

A25A1201. KING v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Terel King was found guilty of aggravated assault against an officer, theft by taking a motor vehicle, fleeing and attempting to elude an officer (five counts), obstruction of an officer (two counts), reckless driving (two counts), failure to stop at a stop sign (six counts), and weaving over the roadway. The trial court merged certain counts in the disposition , and pertinent to this appeal, the court additionally merged two of three fleeing counts challenged by King in his motion for new trial (Counts 3 and 5). King now appeals, contending that the trial court erred by failing to merge the other count he challenged in his motion, Count 4. Because that

count was predicated on distinct conduct supporting the fleeing offense alleged, we affirm.

Construed in favor of the verdict,[1] the record shows that the Thomaston, Georgia police department learned that King, who had outstanding felony arrest warrants, was in the area driving a Cadillac Escalade. A police captain issued a "BOLO," sharing this information. At approximately 4:00 p.m., officer Bobby Poore saw King's vehicle and attempted to execute a traffic stop by activating the blue lights and siren on his unmarked police car.[2] Instead of pulling over, King fled, running stop signs and weaving through traffic at a high rate of speed in a residential area, at one point driving through a yard. Poore radioed for help in the chase, and another officer, Derrick Little, joined the chase in his marked police cruiser with his lights and siren activated. A third officer, Sidney Corley, was able to position his vehicle along the

---

[1] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[2] Poore was wearing khaki pants and a blue police shirt with an embroidered badge and "CID" on the back.

chase route and ram King's vehicle, disabling it.[3] King exited the vehicle on foot, and Poore chased him, ordering him to stop.

Officer Little joined the foot chase and also ordered King to stop; King changed direction and continued fleeing until he entered a Nissan Pathfinder belonging to a bystander who had stopped to render aid. Another responding officer, Jared Fordham, also witnessed King's escape and entry into the Pathfinder. Poore reached the Pathfinder, shouted stop, and attempted to remove King, who resisted despite being tased by Poore. King ultimately drove off with Poore still briefly in contact with the vehicle: "[King] put the car in drive, hit the gas . . . and [Poore] went flying."[4]

At this point, Officer Fordham returned to his marked police cruiser and gave chase along with several other police units as King fled recklessly through the area. King was not apprehended that day but was later arrested and charged with 18 counts stemming from the chase. Following a jury trial, he was convicted on 17 of the counts[5] and sentenced to a total of 54 years with 31 to serve.

---

[3] Corley was driving an unmarked Ford F-150 equipped with sirens and lights that were activated at the time.

[4] Poore was injured in King's escape and ultimately retired due to disability.

[5] One count was nolle prossed.

Relevant to this appeal, Counts 3, 4, and 5 alleged fleeing or attempting to elude after Officer Little signaled him to stop.[6] On King's motion for new trial, the trial court merged Counts 3 and 5 on the ground that they were predicated on the same conduct, so it vacated the conviction on those counts.[7] But the trial court ruled that Count 4 was predicated on different conduct, so it denied King's request to merge that count. King now appeals.

King contends that Count 4 should be merged because it was a duplicative conviction for the same conduct after being signaled to stop by Officer Little. We disagree.

> When a defendant enumerates a merger error after being convicted of multiple counts of the same crime, the correct merger analysis requires courts to ask whether those crimes arose from a single course of conduct and, if so, whether the defendant can face multiple

---

[6] Two additional fleeing counts (Counts 6 and 7) pertain to King's flight after orders to stop by two other officers. King does not challenge those counts on appeal. Cf. *Smith v. State*, 290 Ga. 768, 774 (3) (723 SE2d 915) (2012) (five signals to stop by five different police vehicles can support five different convictions for fleeing).

[7] It is not clear from the record whether the final disposition included any conviction based on those two counts. See generally *Carr v. State*, 363 Ga. App. 35, 46 (2) (b) (i) (870 SE2d 531) (2022) (a conviction on merged counts should be vacated and the conviction and sentence re-entered on only one of the counts). The State has not raised this issue, so we do not address it.

convictions and sentences under a unit-of-prosecution analysis. In determining whether the crimes arose from a single course of conduct, courts may examine whether the defendant acted with the same or differing intents, whether the crimes occurred at the same place, and whether the crimes occurred at the same time or were separated by some meaningful interval of time. If the crimes arose from a single course of conduct, courts then must perform a unit-of-prosecution analysis to determine whether the course of conduct involves one or more distinct "offenses" under the statute. . . .[8]

"Whether offenses merge is a legal question, which an appellate court reviews de novo."[9]

---

[8] (Citations and punctuation omitted.) *Owens v. State*, 374 Ga. App. 56, 70-71 (4) (911 SE2d 330) (2025). This analysis is different from that adopted in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006), which addresses whether multiple counts charging different crimes merge because one is included in another. See generally *Shropshire v. State*, 371 Ga. App. 686, 687 (902 SE2d 677) (2024) ("Merger analysis often involves counts charging two different crimes and that is the context in which *Drinkard*'s 'required evidence' test is applied. But merger questions may also arise when a defendant is charged with multiple counts of the same crime.") (citation and punctuation omitted).

[9] (Punctuation omitted.) *Johnson v. State*, 313 Ga. 155, 159 (4) (868 SE2d 226) (2022).

We first look at whether Counts 3, 4, and 5 arose from the same course of conduct. Those counts accused King of fleeing after being told to stop by Officer Little:

> Count 3 — . . . [King] . . . being the driver of . . . a 2000 Cadillac Escalade, did willfully fail to bring his vehicle to a stop while fleeing and attempting to elude a pursuing police vehicle . . . [by driving recklessly through the residential area] after having been given an audible and visual signal to bring his vehicle to a stop by Officer Derrick Little. . . .

> Count 4 — . . . [King] . . . being the driver of . . . a 2003 Nissan Pathfinder, did willfully fail to bring his vehicle to a stop while fleeing and attempting to elude a pursuing police vehicle . . . [by driving recklessly through the residential area] after having been given an audible and visual signal to bring his vehicle to a stop by Officer Derrick Little. . . .

> Count 5 — . . . [King] . . . being the driver of a . . . 2000 Cadillac Escalade, did willfully fail to bring his vehicle to a stop while fleeing and attempting to elude a pursuing police vehicle . . . [by colliding with Poore's F-150] after having been given an audible and visual signal to bring his vehicle to a stop by Officer Derrick Little . . . .

As noted by the trial court, Counts 3 and 5 were both predicated on King's flight while recklessly driving the Escalade after Officer Little signaled him to stop.

6

Whether Count 4 arose from a different course of conduct, and therefore did not merge, depends on "whether [King] acted with the same or differing intents, whether the crimes occurred at the same place, and whether the crimes occurred at the same time or were separated by some meaningful interval of time."[10] The evidence and indictment show that Counts 3 and 5 were predicated on King fleeing in the Escalade, which act ended after he was rammed by the F-150. At that point, King exited the Escalade, fled on foot while being pursued, commandeered the bystander's Pathfinder, resisted Officer Poore's efforts to wrestle him out of the Pathfinder, endured Poore's tasing, and drove off in the Pathfinder after refusing to heed Officer Little's verbal command to stop. At that point, King's flight (comprising Count 4) continued to a different location, in a different vehicle, while being pursued by multiple units.

These events occurred at different places and were separated by a sufficient interval of time such that Count 4 was not a duplicate conviction on the same course of conduct as Counts 3 and 5. "[W]hen conducting this analysis, that the interval is

---

[10] (Punctuation omitted.) *Owens*, 374 Ga. App. at 70-71 (4), quoting *Johnson*, 313 Ga. at 159 (4).

merely minutes or even seconds cannot be a solely determinative factor."[11] King's flight in Count 4 was separated from the acts alleged in the other counts by a foot chase, physical altercation, and use of a different (stolen) car driven through different roads and newly endangering other members of the public. In this sense, the scenario is different from that in *Gibbs v. State*,[12] relied upon by King, in which this Court held that two fleeing counts merged because they differed only in how they described the fleeing conduct.[13] One count stated that the defendant collided with a Buick Enclave, and another count stated that "while committing this act, [the defendant was] . . . fleeing in traffic conditions, to wit: wet road and heavy traffic, . . . plac[ing] the general

---

[11] (Punctuation omitted.) *Mabala v. State*, 369 Ga. App. 634, 638 (2) (894 SE2d 209) (2023), quoting *Ray v. State*, 359 Ga. App. 637, 642 (3) (859 SE2d 793) (2021). Compare *Johnson v. State*, 364 Ga. App. 749, 752 (1) (874 SE2d 807) (2022) (multiple trips into the building were not separate acts supporting separate theft counts but instead resulted "from limits on how much property Johnson could move in each trip and therefore [indicative of] a single plan to steal multiple items") (punctuation omitted).

[12] 340 Ga. App. 723 (798 SE2d 308) (2017).

[13] See id. at 732 (4).

public at risk of receiving serious injuries."[14] Because this was essentially the same conduct, we held that the counts merged.[15]

Here, by contrast, Count 4 was not predicated on the same conduct, and it occurred as a sufficiently distinct act from Counts 3 and 5. Therefore, the trial court correctly held that Count 4 was not a part of the same course of conduct as the other counts for purposes of merger.[16] Accordingly, we affirm the denial of King's motion for new trial on this ground.

*Judgment affirmed. Markle and Padgett, JJ., concur.*

---

[14] (Punctuation omitted.) Id. at 730 (4).

[15] See id. at 732 (4).

[16] In light of this holding, we need not specifically engage in the unit-of-prosecution aspect of the merger analysis. See *Owens*, 374 Ga. App. at 70-71 (4). But we note that Georgia's courts have held that "the act or conduct that is prohibited by [the fleeing statute] is the willful failure or refusal to bring one's vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop." (Punctuation and emphasis omitted.) *Gibbs*, 340 Ga. App. at 731 (4), quoting *Smith v. State*, 290 Ga. 768, 774 (3) (723 SE2d 915) (2012). We further note that *Gibbs* and *Smith* addressed a prior version of the fleeing statute that was later amended effective 2022. See Ga. L. 2022, p. 100, § 1. King committed these offenses in 2020, but the change is not material to this analysis.