**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 26, 2017**

# In the Court of Appeals of Georgia

A17A0180. DIMAURO v. THE STATE.

DILLARD, Presiding Judge.

Following a jury trial, former police officer Nicholas Dimauro was convicted of aggravated assault, aggravated battery, and two counts of violating his oath of office. Dimauro appeals these convictions, arguing that the trial court erred in (1) admitting evidence of a similar transaction; (2) admitting evidence that a witness was harassed; (3) admitting opinion evidence from various police officials; (4) refusing to give a requested special jury instruction on the reasonable use of force; (5) admitting the prior consistent statements of a witness; (6) excluding certain impeachment evidence; (7) failing to dismiss the indictment on the ground that he was prohibited from presenting evidence to the grand jury; and (8) failing to intervene

and address the prosecutor's alleged misconduct during closing argument. For the reasons set forth *infra*, we affirm Dimauro's convictions.

Viewed in the light most favorable to the jury's verdict,[1] the record reflects that on September 4, 2010, Robert Wormley, who is white, was walking home in the Bankhead neighborhood of Atlanta around 3:00 a.m. Some Atlanta Police Department ("APD") officers, including Dimauro, referred to white people they saw in this neighborhood as "tourists," and generally considered them to be suspicious characters.[2] That night, Dimauro was on patrol when he stopped Wormley, who was walking in the middle of the road, and asked him for identification. Wormley—who was a convicted felon on probation and out past his curfew—responded that he had no identification. Dimauro again asked to see some form of identification , and Wormley once again responded that he had no identification and told Dimauro that he was going home. Dimauro then directed Wormley to put his hands on the patrol car, which he did. While Wormley's hands were on the vehicle, Dimauro struck him

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

[2] Suffice it to say, there is "no objective manifestation that a person is, or is about to be, engaged in criminal activity merely because the person is a white man in a black neighborhood late at night[.]" *Hughes v. State*, 269 Ga. 258, 261 (1) (497 SE2d 790) (1998).

2

in the back of the head with a flashlight or a baton, and Wormley then took off running. As he fled, Wormley's flip flops caused him to trip and fall, but he sustained no injuries. But while he was still on the ground, Dimauro caught up to Wormley, immediately kneed him in his side, and then hit him in his left forearm with a baton.

Wormley was eventually able to get away from Dimauro, and he ran around a fence and into a backyard, where he hid behind a piece of plywood laying against the back of the house. And shortly thereafter, several other officers responded to the scene. Indeed, from his hiding place, Wormley could see multiple flashlights coming around the side of the house and into the yard. Wormley then heard someone exclaim, "there he is," and then he felt someone jump on the plywood. An unidentified officer then kicked Wormley in the face, he was knocked unconscious, and the next thing he remembered was waking up in a police car.

From the scene, Wormley was transferred to Grady Hospital, where he was treated for a collapsed lung, a fractured wrist, broken ribs, lacerations on his forehead and scalp, and cracked teeth. While he was hospitalized, Wormley made a statement to an officer from internal affairs. Four days later, Wormley was released from the hospital. He was then immediately transported to jail on charges of aggravated battery on a police officer, obstruction, and being a pedestrian in the roadway. At trial,

Wormley admitted that he had used cocaine earlier that evening, had prior felony convictions, and had spent time in prison. Wormley also testified that, just before the trial began, the State *nolle prossed* an unrelated escape charge that he had been facing.

Ultimately, Dimauro was indicted by a grand jury for aggravated battery by depriving Wormley of the use of his arm and ribs, aggravated battery by disfiguring Wormley's head, aggravated assault, and two counts of violating his oath of office. Following a jury trial, he was found not guilty of aggravated battery by depriving Wormley of the use of his arms and ribs and found guilty on the remaining charges. Dimauro then filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

1. Dimauro first asserts that the trial court erroneously admitted evidence under OCGA § 24-4-404 (b) (i.e., Rule 404 (b)) in order to establish intent and mistake of fact. Specifically, he argues that evidence regarding an assault against another man Dimauro attempted to detain should not have been admitted to show intent because the charged crimes were general intent crimes, and similar transaction evidence is most appropriate in cases involving specific intent. Dimauro also asserts that a video

4

shown to the jury of the assault against the other man was more prejudicial than probative. We disagree.

OCGA § 24-4-404 (b) provides that

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[3]

The Supreme Court of Georgia has adopted a three-part test by which we evaluate the admissibility of so-called "other acts" evidence:[4]

(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed

---

[3] *See also Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016) (quoting OCGA § 24-4-404 (b)). The new Evidence Code applies to this case because Dimauro was tried in December 2014. *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[4] *See Smart*, 299 Ga. at 417 (2); *see generally Parks v. State*, 300 Ga. 303, 305 (2) (794 SE2d 623) (2016) (adopting the three-part test used by the Eleventh Circuit Court of Appeals in evaluating such evidence under the Federal Rules of Evidence, upon which Georgia's new Evidence Code is largely modeled).

5

by its undue prejudice; [and] (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.[5]

As to the first factor, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6] And as to the second factor, even if Rule 404 (b) evidence is relevant, we must still decide whether "the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403."[7] Of course, application of the Rule 403 balancing test is "a matter committed principally

---

[5] *Smart*, 299 Ga. at 417 (2) (punctuation omitted) (quoting *United States v. Ellisor*, 522 F3d 1255, 1267 (II) (A) (11th Cir. 2008)). We note that Dimauro does not challenge the third prong.

[6] OCGA § 24-4-401; *accord Smart*, 299 Ga. at 418 (2) (a).

[7] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted); *accord State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015); *see also* OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 96 (5th ed. 2016) ("Under Rule 403, the term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. The prejudice referenced in Rule 403 addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." (footnote omitted)).

6

to the discretion of the trial courts," but as we have explained before, "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly."[8] Finally, we review the admission of Rule 404 (b) evidence "for a clear abuse of discretion," a deferential review requiring us to make "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[9]

Prior to trial, Dimauro filed a motion in limine seeking to prevent the State from presenting evidence regarding ten different allegations of excessive force that had been made against him throughout his time as an officer with the APD. Thereafter, the State filed its notice of intent to introduce "other acts" evidence concerning two incidents, and Dimauro filed a motion to prevent the introduction of

---

[8] *Smart*, 299 Ga. at 418 (2) (b) (punctuation omitted); *accord Jones*, 297 Ga. at 164 (3).

[9] *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016) (punctuation omitted); *accord Graham v. State*, 337 Ga. App. 664, 669 (2) (788 SE2d 555) (2016). *See* CARLSON, *supra* note 7, p. 130 ("Evaluating the balance between probativity and prejudice under Rule 403 calls for a commonsense assessment of all the circumstances surrounding the other act, including [the] proponent's need for the [Rule 404 (b)] evidence, the overall similarity between the extrinsic evidence and the offense at issue, and the temporal proximity of the two.").

such evidence. Specifically, the State sought to introduce evidence that Dimauro (1) falsely accused a man of dragging him with a vehicle and pinning him in during an arrest, and (2) used excessive force against Clemmin Davis while attempting to detain him in 2011.

At the hearing on these matters, the State sought to introduce evidence, including a short video, showing that on April 29, 2011, Dimauro, along with two other officers, struck Davis while attempting to arrest him. Dimauro asserted, during an internal investigation, that Davis was resisting arrest. The State argued that the incident was relevant to the jury's determination of whether Dimauro was truthful regarding his encounters with citizens and whether the amount of force he used was actually necessary to bring a suspect into custody. Dimauro argued that the Davis incident was not relevant to show intent or lack of mistake of fact, was not similar to the charged offense, and that the video of the assault was merely intended to inflame the passions of the jury. The court took the matter under advisement and ultimately ruled, based on its consideration of the motions and oral argument, that the Davis incident was admissible to show Dimauro's "intent to commit an assault upon the victim as well as his lack of mistake of fact in his assertion of the suspect's resistance leading to the use of force." The trial court deemed the other incident inadmissible

and prohibited the State from referring to it or any other allegations of excessive force against Dimauro.

At trial, Davis testified that on April 29, 2011, he fled from police officers during a traffic stop. He eventually ran into a wooded area and fell to the ground. While he was on the ground, three officers, including Dimauro, punched, kicked, and hit him for several minutes. The State also presented testimony from a man who saw and videotaped Davis's beating and uploaded the video to YouTube. The 14-second video, made on the witness's cell phone, was introduced into evidence and played for the jury. The video is not of great quality, but it depicts three officers in a wooded area, surrounding Davis. Although the video clearly depicts the officers on either side of Davis hitting and kicking him, it is difficult to see what Dimauro, who is in the middle of the three officers, is doing.

As an initial matter, we note that although Dimauro argues that similar transaction evidence is most appropriate in cases involving specific intent, he concedes that Rule 404 (b) evidence "is not automatically excluded in general intent crimes."[10] Here, Dimauro was charged with aggravated battery, aggravated assault

---

[10] *See, e.g., State v. Jones*, 297 Ga. at 161 (2) (holding admissible Rule 404 (b) evidence where "the charged DUI crimes are general intent crimes").

with a deadly weapon, and violating his oath of office. Dimauro's entry of a not guilty plea "put the State to its burden of proving every element of the crimes charged, including intent."[11] As to aggravated assault with a deadly weapon, the intent required is "an intent to commit the act which in fact places another in reasonable apprehension of injury[.]"[12] And evidence that an accused committed an intentional act generally is relevant to "show—the evidence, in other words, has some tendency to make more or less probable—that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time and in similar circumstances."[13] Thus, evidence that Dimauro, shortly after the charged incident, committed an assault against another detainee was relevant to show that he committed a similar act against Wormley with a similar intent.[14]

---

[11] *Jones v. State*, 299 Ga. 377, 382 (4) (788 SE2d 477) (2016); *accord Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016).

[12] *Easley v. State*, 266 Ga. App. 902, 905 (4) (598 SE2d 554) (2004); *accord Smith v. State*, 280 Ga. 490, 491-92 (1) (629 SE2d 816) (2006).

[13] *Olds*, 299 Ga. at 72 (2); *accord Gerbert v. State*, 339 Ga. App. 164, 176 (3) (a) (793 SE2d 131) (2016).

[14] *See Olds*, 299 Ga. at 75 (2) (explaining that "[e]vidence is relevant if it has any tendency to prove or disprove a fact" (punctuation omitted)). *Cf. Smart v. State*, 299 Ga. at 418 (2) (a) (holding that other acts evidence that the defendant had committed domestic violence against a former partner was "relevant to help the jury

Furthermore, we find that the probative value of the Davis assault video was not substantially outweighed by any undue prejudice.[15] The video was short in duration and, more importantly, not particularly inflammatory, in part because of its poor quality. This case, then, is distinguishable from *United States v. Stout*,[16] upon which Dimauro heavily relies. In *Stout*, the Sixth Circuit held that the trial court correctly prohibited the admission of other evidence that the defendant had surreptiously videotaped a teenage girl while she showered because the other acts evidence was "more lurid and frankly more interesting than the evidence surrounding the actual charges" of possession of child pornography.[17]

But here, even if the trial court erred in admitting the foregoing evidence, any error was harmless because "it is highly probable that the error did not contribute to the verdict."[18] And when we determine whether or not an error was harmless, "we

---

understand why [the defendant] might have used violence against" his wife, the victim of the charged offenses).

[15] *See supra* note 7 & accompanying text.

[16] 509 F3d 796 (6th Cir. 2007).

[17] *Id.* at 801 (II) (b).

[18] *Edmonson v. State*, 336 Ga. App. 621, 624 (1) (785 SE2d 563) (2016) (punctuation omitted); *accord Peoples v. State*, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014); *Booth v. State*, 293 Ga. 285, 289 (2) (b) (745 SE2d 594) (2013).

11

review the record de novo"[19] and "weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict."[20]

So viewed, we initially note that the jury was given the following limiting instruction: "You may not infer from such [similar transaction] evidence that the defendant is of a character that would commit such crimes or acts. The evidence may be considered only to the extent that it may show the elements of intent or lack of mistake . . . in this case now on trial." Moreover, Wormley testified that Dimauro hit him in the back of the head and on the arm while he was laying on the ground, a witness observed the attack,[21] and there was uncontroverted evidence that Wormley sustained serious injuries. Given this evidence, the Rule 404 (b) evidence establishing

---

[19] *Edmonson*, 336 Ga. App. at 624 (1) (punctuation omitted); *accord Peoples*, 295 Ga. at 55 (4) (c); *Booth*, 293 Ga. at 289 (2) (b).

[20] *Edmonson*, 336 Ga. App. at 624 (1) (punctuation omitted); *accord Peoples*, 295 Ga. at 55 (4) (c); *Booth*, 293 Ga. at 289 (2) (b).

[21] *See supra* Division 5.

12

that Dimauro hit another detainee is "not particularly compelling or prejudicial" and it is likely that any error did not contribute to the verdict.[22]

2. Dimauro next argues that the trial court erred in admitting irrelevant evidence that *other* police officers threatened the man who videotaped the assault on Davis. Again, we disagree.

---

[22] *Hood v. State,* 299 Ga. 95, 105-06 (4) (786 SE2d 648) (2016) (holding that the admission of evidence that the defendant sold drugs on other occasions was harmless where the evidence that he committed the charged crimes was strong); *Peoples*, 295 Ga. at 58 (4) (c) (holding that the admission of evidence that the defendant participated in an unrelated robbery was harmless when the evidence was not particularly compelling or prejudicial and it was highly probable that the trial court's error did not affect the jury's verdict in murder trial); *Edmonson*, 336 Ga. App. at 625-26 (1) (recounting evidence presented by the State, which did not include the questioned Rule 404 (b) evidence, and concluding that it was highly probable that any error did not contribute to the verdict). *See also Baker v. State*, 214 Ga. App. 640, 640 (1) (448 SE2d 745) (1994) (noting that limiting instruction was one mitigating factor in determining that proof of defendant's prior conviction did not place his character at issue to such an extent to affect the verdict on the charged offenses). *But see Brooks v. State*, 298 Ga. 722, 727-28 (2) (783 SE2d 895) (2016) (holding that evidence of defendant's guilt was sufficient to convict him of murder but was not overwhelming and erroneously admitted Rule 404 (b) evidence that defendant previously participated in the murder of a state trooper "was extremely prejudicial in the eyes of the jury[,]" such that the court could *not* conclude that any error was harmless).

13

At the outset, we note that, as a general rule, "admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[23]

Here, Dimauro asserts that evidence that other police officers harassed the witness was not relevant.[24] But a review of the evidence shows that the witness testified that Dimauro was one of several police officers who harassed him. Indeed, during direct examination, the witness testified that the three officers present in the video "threatened [him]" and told him they knew where he lived. Over defense objection, the witness then testified that, following his videotaping the assault and posting it on YouTube, he "had officers coming to [his] business harassing [him] for no reason[,]" resulting in the witness closing his business. On cross-examination, the witness clarified that Dimauro, specifically, pulled up in a vehicle later on the same day as the Davis incident and "hassled [him] about that video[.]" And, as a general

---

[23] *Adams v. State*, 316 Ga. App. 1, 3 (1) (728 SE2d 260) (2012) (punctuation omitted); *accord Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010).

[24] *See* OCGA § 24-4-402 ("All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible."); *see also supra* note 6 & accompanying text.

14

matter, it is well settled "in Georgia that evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt."[25] Thus, while the evidence here went to the commission of other acts, rather than the charged offenses, it was nonetheless relevant.[26] Accordingly, we affirm the trial court's admission of same.[27]

3. Dimauro asserts that the trial court erred in admitting opinion testimony from APD Chief George Turner and Lieutenant Sharonne Steed on whether Dimauro's use

---

[25] *Kell v. State*, 280 Ga. 669, 671 (2) (a) (631 SE2d 679) (2006); *accord Nguyen v. State*, 273 Ga. 389, 397 (3) (543 SE2d 5) (2001) ("[T]he State may introduce evidence of a defendant's attempt to influence a witness as consciousness of guilt by conduct.").

[26] *See supra* note 6 & accompanying text.

[27] *See Marchman v. State*, 299 Ga. 534, 545 (787 SE2d 734) (2016) ("Evidence of a threat to a witness by the defendant is relevant as showing an attempt to prevent a witness from testifying and thereby avoiding punishment for the crime." (citation and punctuation omitted)); *Nguyen*, 273 Ga. at 397 (3) (holding admissible evidence that the defendant asked a witness to lie and defendant's wife threatened the witness); *Ballard v. State*, 268 Ga. 895, 895 (2) (494 SE2d 644) (1998) (holding admissible evidence that the defendant threatened to beat his girlfriend if she did not lie to police); *United States v. Gonzalez*, 703 F2d 1222, 1223 (11th Cir. 1983) ("Courts may consider evidence of threats to witnesses as relevant in showing consciousness of guilt."). *Cf. Redding v. State*, 297 Ga. 845, 851 (5) (a) (778 SE2d 774) (2015) (holding admissible evidence of a jailhouse attack by others where the witness testified that his assailants made statements that made him felt threatened by defendant).

of force against Wormley and Davis was appropriate, as well as their testimony regarding the administrative proceedings that occurred following these incidents. Yet again, we disagree.

Prior to trial, Dimauro filed a motion to exclude any lay or expert testimony from the State's witnesses that he used excessive force against Davis or Wormley. Dimauro also filed a motion to exclude any evidence regarding statements that he made during the administrative investigations into the Davis and Wormley incidents, arguing that statements made by a public employee during an internal investigation cannot be used against him at trial. The trial court ruled that the State could elicit evidence from witnesses as to whether Dimauro's use of force was proper and whether he followed APD policy and procedure. In so ruling, the trial court instructed the parties to limit the testimony to that permitted in the then-recent ruling by the United States District Court for the Middle District of Georgia in *Collins v. Sheppard*,[28] a civil rights suit brought after officers broke a man's arm while he was in the custody of a youth detention center. In *Collins*, the district court ruled that the director of the Georgia Department of Juvenile Justice's Training Academy was

___

[28] No. 1:13-CV-31 (WLS), 2014 U.S. Dist. LEXIS 145973 (M.D. Ga. Oct. 14, 2014).

16

limited to testifying about techniques and procedures for the use of force in juvenile detention centers and whether the officer applied those techniques and procedures properly and used force appropriately.[29] And here, the trial court ruled that the State's witnesses were similarly limited in their testimony. The court did, however, prohibit the State from eliciting testimony regarding Dimauro's termination.

Steed, who served as the commander of the APD's internal affairs unit, testified on direct examination that she has been an APD officer since 1997, serving most recently as a watch commander. In internal affairs, she was trained to investigate and did investigate use-of-force complaints. Specifically, she investigated Wormley and Davis's complaints against Dimauro and determined that, in both instances, Dimauro's use of force was not appropriate and violated APD polices and procedures. After Steed made her determination, it was then forwarded to the chief for his consideration. During cross-examination, Dimauro's counsel elicited from Steed that her recommendation in the Wormley incident was not sustained by the chief.

---

[29] *Id.* at *9, 12-14. We provide this information merely to give context to the trial court's ruling. As set forth *infra*, we conclude that the State's witnesses' testimony was admissible under established Georgia law. *See infra* notes 34-43 & accompanying text.

Turner then testified that he had been an APD officer for more than 30 years, and became chief in 2010. As chief, he was the ultimate authority in the department for reviewing the disciplinary complaints, including the complaints against Dimauro. He also approved all APD standard operating procedures and the department's use-of-force training. Turner reviewed Wormley's complaint against Dimauro and found that his use of force was not appropriate and not in accordance with APD policies and procedures. Nevertheless, Turner did not sustain Wormley's complaint because he received that complaint and Davis's complaint at the same time, both complaints served as a basis for termination, and he sustained Davis's complaint. This was the only reference to Dimauro's termination at trial.

On appeal, Dimauro raises several related arguments. He argues that Turner and Steed's testimony was improper because neither witness was offered as an expert witness. He also asserts that the officers' opinion testimony as to whether Dimauro's use of force was appropriate was not admissible. Finally, Dimauro asserts that Turner improperly testified that he was terminated based on these incidents.

We first note that the admissibility of expert testimony is "a matter within the trial court's sound discretion."[30] And we will not reverse the trial court's ruling on such evidence "absent an abuse of that discretion."[31] With these guiding principles in mind, we will now consider Dimauro's specific claims of error.

(a) As to Dimauro's claim that Turner and Steed were not proffered as experts, Dimauro failed to object to either witnesses' testimony on this basis in his motion in limine or at trial. Accordingly, Dimauro has waived this argument by failing to raise it below.[32] But even if Dimauro had objected, "[a]lthough much preferred for the sake

---

[30] *Lott v. State*, 281 Ga. App. 373, 375 (3) (636 SE2d 102) (2006) (punctuation omitted); *accord Brown v. State*, 285 Ga. 772, 774 (2) (683 SE2d 581) (2009).

[31] *Lott*, 281 Ga. App. at 375 (3) (punctuation omitted); *accord Brown*, 285 Ga. at 774 (2).

[32] *See Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) (holding that a criminal defendant waived an argument when he did not raise it before the trial court); *Griffey v. State*, 298 Ga. App. 610, 611 (680 SE2d 634) (2009) (holding that the defendant's argument was waived on appeal because it was not raised before the trial court). The only objection lodged during either witness's testimony was during redirect examination, when Dimauro objected to the State questioning Turner about whether Dimauro made a voluntary statement regarding the Davis incident. The trial court allowed the questioning, and the State elicited that Turner did not recall whether Dimauro made such a statement. *But see CSX Transp., Inc. v. Smith*, 289 Ga. 903, 907 (2) (717 SE2d 209) (2011) (holding that, following the trial court's ruling on the defendant's motion in limine, the defendant was not required to "object to evidence encompassed by his motion"); *accord Reno v. Reno*, 249 Ga. 855, 856 (1) (295 SE2d 94) (1982).

19

of clarity and certainty and to preclude question, it is not required that an expert be formally tendered."[33] And here, both witnesses testified to their expertise in evaluating whether an officer's use of force violated APD policies and procedures, and Dimauro's counsel had an opportunity to cross-examine them about their qualifications and testimony. Thus, the officers' testimony was admissible.[34]

(b) Moreover, in criminal trials, the opinions of experts on "any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."[35] And expert opinion testimony is admissible where "the conclusion of the expert is one which jurors would

---

[33] *Morrow v. State*, 230 Ga. App. 137, 140 (3) (a) (495 SE2d 609) (1998) (holding that where defendant was afforded an opportunity to challenge witness's credentials and cross-examine him, lack of tender was not fatal); *see Henry v. State*, 265 Ga. 732, 736-37 (5) (462 SE2d 737) (1995) (holding that untendered interpreter/expert witness's opinion testimony was admissible where she was subject to questioning regarding her qualifications and the content of her testimony).

[34]*See Walton v. State*, 291 Ga. App. 736, 740 (2) (662 SE2d 820) (2008) (holding that although witness was "never tendered as an expert witness, the prosecutor laid the foundation for his testimony by questioning him extensively about his experience and training[,]" and defendant's claim of error lacked merit); *supra* note 33.

[35] OCGA § 24-7-707.

not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman."[36]

In the case *sub judice*, Dimauro was charged with two counts of violating his oath of office.[37] In order to convict an officer of violating his oath of office, the State must prove that "the defendant was actually administered an oath, that the oath was prescribed by law, and that the officer violated the terms of that oath."[38] And here, the State presented evidence, through an APD instructor, that Dimauro had been administered an oath of office, and that the oath was required by law. The instructor, who was tendered as an expert in APD policy and procedures, testified that if a person were to commit a crime or violate APD rules and regulations, that would

---

[36] *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981) (citation omitted). *Smith* was decided under the former Evidence Code, but it is appropriate to rely on decisions under the old Code in this instance because "the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under the new Evidence Code (OCGA § 24-7-707) are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67)." *Mosby v. State*, 300 Ga. 450, 453 (2) n.2 (796 SE2d 277) (2017).

[37] *See* OCGA § 16-10-1 ("Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.").

[38] *Reynolds v. State*, 334 Ga. App. 496, 499 (1) (779 SE2d 712) (2015) (punctuation omitted); *accord Bradley v. State*, 292 Ga. App. 737, 740 (2) (665 SE2d 428) (2008).

violate his oath of office. Thus, Steed and Turner's testimony that Dimauro's use of force was in violation of APD policy was relevant to whether he violated his oath of office.[39] Moreover, such evidence was also beyond the ken of the average layman.[40] Thus, we find that the trial court did not abuse its discretion in admitting Steed and Turner's testimony.

The case upon which Dimauro relies in supporting his argument, *Bly v. State*,[41] is easily distinguishable. Indeed, *Bly* concerned a prosecution for an assault committed on a police officer and obstruction, and, as a result, the question of whether an officer violated police department policies and procedures was not at issue. Instead, the Supreme Court of Georgia held in *Bly* that the trial court erred in

---

[39] *See supra* notes 6 and 24 & accompanying text.

[40] *See Gibbs v. State*, __ Ga. App. __, __ (3) (798 SE2d 308) (2017) (holding that, in prosecution for aggravated assault on a police officer and fleeing a police officer, expert testimony on police officers' use of force was admissible because it was not something with which the jurors ordinarily would be familiar). *Cf. Samples v. City of Atlanta*, 916 F2d 1548, 1551 (11th Cir. 1990) (explaining that, in civil rights action against officer, "although literal wording of the question posed tends to call for an answer that would invade the province of the jury, which in this case was to decide the reasonableness of the officer's actions[,] . . . the questions leading up to this testimony, and the manner in which the expert answered the question, properly informed the jury that the expert was testifying regarding prevailing standards in the field of law enforcement").

[41] 283 Ga. 453 (660 SE2d 713) (2008).

admitting testimony from another officer that the police officer, the victim of the assault, "acted appropriately" because it was a matter "which the jurors could have made an equally intelligent judgment of their own[.]"[42] Importantly, in *Bly*, the expert was *not* asked to testify about the standard of conduct for a police officer or whether the officer's actions (as the victim of an assault) comported with that standard.[43]

(c) Finally, Turner did testify, in violation of the court's ruling in limine, that Dimauro was recommended for termination. But not all trial errors require reversal.[44] And even assuming that the admission of evidence regarding Dimauro's termination was erroneous, it is highly probable that this error did not contribute to the verdict and, thus, for the same reasons discussed in Division 1 *supra*, was harmless.[45]

---

[42] *Id.* at 458 (2) (punctuation omitted).

[43] *See id.* at 456, n.7.

[44] *See Peoples*, 295 Ga. at 55 (4) (c); *see City of Coll. Park v. Pichon*, 217 Ga. App. 53, 54 (1) (456 SE2d 686) (1995) ("[A]n appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful."); *Merrill v. Eiberger*, 198 Ga. App. 806, 806 (403 SE2d 91) (1991) ("This [C]ourt serves to correct errors of the trial court. It is a well established principle, however, that for errors to require reversal they must be harmful.").

[45] *See generally Douglas v. State*, 340 Ga. App. 168, 174-75 (796 SE2d 893) (2017) (holding that, even if the trial court's evidentiary ruling was erroneous, any error was harmless because it was highly probable that the error did not contribute to the jury's verdict). *See also supra* notes 18-20 & accompanying text.

4. Dimauro next contends that the trial court erred in refusing his requested special instruction on the reasonable use of force, which he asserts is based on the Supreme Court of the United States's opinion in *Graham v. Connor*.[46] Once again, we disagree.

Specifically, Dimauro requested that the jury be instructed, *inter alia*, as follows:

> In considering whether the defendant's actions were reasonable, you must take into account the facts and circumstances confronting the officer at the time force was administered. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene. You must take into account the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. You should consider all of the surrounding circumstances, including but not limited to whether the subject against whom force was used posed an immediate threat to the safety of the officer, the severity of the crime in question, and whether the subject actively resisted arrest or attempted to flee.

---

[46] 490 U.S. 386, 396 (109 SCt 1865, 104 LE2d 443) (1989) (explaining that, in analyzing a civil rights claim based on excessive force, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene").

Initially, it is important to note that Dimauro did not object to any portion of the trial court's jury charges as given, and under OCGA § 17-8-58, "[a]ny party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate."[47] The failure to do so precludes "appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects the substantial rights of the parties."[48] In such cases, as the Supreme Court of Georgia has explained, "the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings."[49] Consequently, because Dimauro failed to object to the jury charge, we are limited to reviewing the charge for plain error.[50]

---

[47] OCGA § 17-8-58 (a).

[48] OCGA § 17-8-58 (b); *see also Alvelo v. State*, 290 Ga. 609, 614 (5) (724 SE2d 377) (2012) (holding that OCGA § 17-8-58 (b) requires an appellate court to review for plain error an alleged jury-instruction error to which no objection was raised at trial); *Wheeler v. State*, 327 Ga. App. 313, 318 (3) (758 SE2d 840) (2014) (same).

[49] *Alvelo*, 290 Ga. at 615 (5) (punctuation omitted); *accord Wheeler*, 327 Ga. App. at 318 (3).

[50] *See* OCGA § 17-8-58 (b); *see also State v. Alvarez*, 299 Ga. 213, 214 (1) (790 SE2d 66) (2016) (noting that when trial counsel fails to object to a jury charge,

It is, of course, well established that "the charge to the jury is to be taken as a whole and not out of context when making determinations as to its correctness."[51] And in this matter, the trial court provided the jury with the following instructions on justification and the use of force:

An affirmative defense is a defense that admits the doing of the act charged, but seeks to justify, excuse or mitigate it. Once an affirmative defense is raised, the burden is on the State to disprove it beyond a reasonable doubt. The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct.

The defense of justification can be claimed: A) when the person's conduct is justified . . . in defense of self or others[;] B) when the person's conduct is in reasonable fulfillment of his duties as a government officer or employee[;] C) when the person's conduct is reasonable and is performed in the course of making a lawful arrest[;] D) when the person's conduct is justified for any other reason specified under the laws of this State[;] or E) in all other instances based on similar reason and justice as those enumerated in this charge.

appellate courts must review the issue under the plain-error doctrine); *Wheeler*, 327 Ga. App. at 318 (3) (same).

[51] *Minor v. State*, 328 Ga. App. 128, 132 (2) (a) (761 SE2d 538) (2014) (punctuation omitted); *see Drayton v. State*, 297 Ga. 743, 748-49 (2) (b) (778 SE2d 179) (2015) (explaining that before a jury charge will be considered reversible error, it must be considered in the context of the jury instructions as a whole).

An arrest for a crime may be made by a law enforcement officer without a warrant if the offender is endeavoring to escape. A person is justified in threatening or using force against another person when and to the extent that he reasonably believes that such threat or force is necessary to defend himself against the other's imminent use of unlawful force. . . .

The use of excessive or unlawful force while acting in self-defense is not justifiable and the defendant's conduct in this case will not be justified if you find that the force used exceeded that which the defendant reasonably believed was necessary to defend against the victim's use of unlawful force, if any.

A police officer is authorized to use in making a lawful arrest only that degree of force that is reasonably necessary to accomplish the arrest. The mere fact that a lawful arrest is being made does not give the officer the right to use excessive force or an unlawful degree of force upon the person being arrested.

Viewing these instructions as a whole, the jury was adequately informed that Dimauro was justified in threatening or using force against Wormley when and to the extent that he reasonably believed such threat or force was necessary to defend

himself.[52] Accordingly, the court's refusal to give the requested special instruction did not constitute error, much less plain error.[53]

5. Dimauro next argues that the trial court erred in admitting into evidence the prior consistent statements of a witness. Again, we find no error.

At trial, Terri Scott testified that on the early morning of September 4, 2010, she heard someone run to the back of her house and fall to the ground. Scott then heard another person running, and she opened the blinds to look outside. In the yard, she saw a police officer run up to Wormley and kick, punch, and knee him as he lay on the ground, screaming. Wormley did not fight the police officer. In the backyard, she also saw a female police officer holding a flashlight. The officer with the flashlight shined her light at Scott's bedroom window and told her to go back to

---

[52] *See Dugger v. State*, 297 Ga. 120, 125 (9) (a) (772 SE2d 695) (2015) (holding that defendant's requested instruction that the reasonableness of his fear for his life must be determined from the position of a person standing in his shoes was not warranted where general instructions on justification were sufficient to inform the jury of that principle); *Christopher v. State*, 269 Ga. 382, 383 (3) (497 SE2d 803) (1998) ("It is not necessary to give the exact language of a request to charge" when the charge given fully explained the concept of justification. (punctuation omitted)); *Pope v. State*, 193 Ga. App. 384, 384 (388 SE2d 25) (1989) (holding that court's general instruction on justification adequately covered the relevant legal principles).

[53] *See Dugger*, 297 Ga. at 125 (9) (a) (concluding that trial court did not err in refusing to give defendant's requested instruction on justification where general instructions were sufficient); *Christopher*, 269 Ga. at 383 (3) (same).

sleep, and Scott pulled down the blinds. The next morning, Scott—who was in high school at the time—told her mother what she had seen, but she did not speak to anyone else about it until four years later, when an investigator came to her home to ask about the incident. On cross-examination, Dimauro questioned Scott about discrepancies between her trial testimony and her earlier testimony before the grand jury.

The State thereafter introduced testimony from a Fulton County District Attorney's Office investigator. In the course of investigating Davis's complaint of excessive force, the investigator learned of the Wormley incident and began looking into it. He visited the scene, where he spoke with Scott's mother and learned that Scott had witnessed the incident. Over Dimauro's hearsay objection,[54] the investigator testified that in mid-August 2014, Scott told him that she saw Dimauro assault Wormley in her backyard. He further testified that Scott's description of the female officer matched the description of another officer who responded to the scene that night.

---

[54] *See* OCGA § 24-8-802 ("Hearsay shall not be admissible except as provided by this article; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.").

It is well established that a witness's prior consistent statement is admissible only where: "(1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination."[55] And a witness's veracity is placed in issue, so as to permit the introduction of a prior consistent statement, "if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[56] But even then, "to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must predate the alleged fabrication, influence, or motive."[57]

Although Dimauro's trial counsel did not directly accuse Scott of lying, her veracity was certainly challenged by questions eliciting the discrepancies between her trial testimony and her September 2014 grand jury testimony and by questions about her failure to report what she saw earlier. Thus, at the very least, Dimauro's cross-

---

[55] *Johnson v. State*, 328 Ga. App. 702, 706 (2) (760 SE2d 682) (2014); *accord Cowart v. State*, 294 Ga. 333, 339 (4) (a) (751 SE2d 399) (2013).

[56] *Johnson*, 328 Ga. App. at 706 (2); *accord Cowart*, 294 Ga. at 339-40 (4) (a); *see also* OCGA § 24-6-613 (c).

[57] *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009) (punctuation omitted); *accord Cowart*, 294 Ga. at 340 (4) (a); *see also* OCGA § 24-6-613 (c).

30

examination of Scott strongly implied that her direct testimony was a recent fabrication.[58] Additionally, Scott's statement to the investigator predated any allegedly fabricated trial testimony.[59] Under these particular circumstances, we conclude that the trial court did not abuse its discretion in allowing the State to introduce Scott's prior consistent statement.[60]

---

[58] *See Kidd v. State*, 292 Ga. 259, 260 (2) (736 SE2d 377) (2013) (holding that "on cross-examination, appellant challenged [one witness's] veracity by posing questions that suggested she had been dishonest" and "similarly challenged [a second witness's] veracity by posing questions that suggested" the second witness had made statements inconsistent with his trial testimony, such that his "trial testimony was recently fabricated"); *Colzie v. State*, 289 Ga. 120, 123 (2) (710 SE2d 115) (2011) (holding that defendant's questions eliciting inconsistencies between witness's direct testimony and statements he previously made to a defense investigator were an attack on the witness's veracity); *Blackmon v. State*, 272 Ga. 858, 859 (536 SE2d 148) (2000) (holding that defense suggested that witness's "trial testimony lacked veracity and had been fabricated" where cross-examination elicited that portions of the witness's "testimony on direct were inconsistent with what he had told defense counsel in an earlier interview").

[59] *See Colzie*, 289 Ga. at 123 (2) (noting that "alleged recent fabrication occurred within the week preceding trial, which clearly was after" the witness made the prior consistent statements, such that prior statements were admissible); *Brown v. State*, 310 Ga. App. 835, 838 (1) (b) (714 SE2d 395) (2011) (noting that victim's prior consistent statement to nurse undisputedly predated her allegedly fabricated trial testimony).

[60] *See Kidd*, 292 Ga. at 260-61 (2) (concluding that trial court did not abuse its discretion in admitting "witnesses's prior sworn statements to rehabilitate their trial testimony" after defense counsel challenged witnesses' veracity on cross-examination); *Colzie*, 289 Ga. at 123 (2) (concluding that, where defense attacked

31

6. Dimauro also argues that the trial court erred in excluding impeachment evidence regarding Wormley. Once again, we find no reversible error.

Specifically, Dimauro argues that the trial court erred in excluding evidence of one of Wormley's prior convictions. Prior to trial, the court admitted Wormley's 2010 burglary conviction and his 2006 conviction for possession of cocaine. But the trial court excluded a 2003 burglary conviction, finding that it may have been more than ten years old, and in any event, the probative value of the conviction did not outweigh its prejudicial impact.[61]

On direct examination, Wormley testified that he had more than one felony conviction. On cross-examination, Dimauro elicited that Wormley had been convicted

_____

witness's credibility and prior consistent statements predated allegedly fabricated testimony, trial court did not err in admitting prior consistent statements); *Brown*, 310 Ga. App. at 838 (1) (b) (same). *See generally* CARLSON, *supra* note 7, p. 334 ("There can be no consistent statement support of a witness until he is attacked. But after a charge of fabrication or improper motive [is] attributed to the witness by the cross-examiner, the witness may be supported or rehabilitated by his earlier statements. The statements must predate the date the beginning of the alleged fabrications or onset of improper motive." (footnote omitted)).

[61] OCGA § 24-6-609 (b) provides: "Evidence of a conviction under this Code section shall not be admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for such conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

32

in 2006 of possession of cocaine and driving with a suspended license, and in 2010 of burglary and possession of a firearm by a felon. Dimauro asserts that the 2003 conviction was admissible because the State "opened the door" to all of Wormley's prior convictions by eliciting testimony from him that he had more than one felony conviction. Generally, a witness "opens the door" to introduction of his entire criminal history when the witness *denies* having a record or multiple convictions.[62] But even assuming Wormley's *admission* that he had more than one felony conviction "opened the door" to his entire criminal history, it is highly probable that any error in excluding his third felony conviction did not contribute to the verdict, in light of the evidence that he had two prior felony convictions, including one for the same offense, he had faced other charges, and he had served time in prison.[63]

---

[62] *See, e.g., McNeal v. State*, 289 Ga. 711, 712-13 (2) (715 SE2d 95) (2011) (holding that defendant "opened the door" to having the State introduce his entire criminal history by implying, during his testimony, that he had only prior conviction); *Scruggs v. State*, 309 Ga. App. 569, 576-79 (5) (711 SE2d 86) (2011) (holding that defense counsel "opened the door" to defendant's entire prior history when defendant denied having multiple prior convictions).

[63] *See Williams v. State*, 328 Ga. App. 876, 880-81 (1) (763 SE2d 261) (2014) (holding that any error in failing to admit burglary victim's prior convictions was harmless where jury was aware that the victim had a criminal record and had spent time in prison). *Cf. Askew v. State*, 310 Ga. App. 746, 750 (3) (713 SE2d 925) (2011) (holding that defendant failed to establish prejudice prong of ineffective assistance claim based on counsel's failure to introduce victim's prior convictions where jury

Dimauro further argues that the trial court improperly excluded as irrelevant evidence that Wormley told his daughter, with regards to his then-upcoming trial on escape charges, "[T]hat's the story." Dimauro argues that this is evidence of an attempt to suborn perjury, admissible under OCGA § 24-6-608 (b).[64] Finally, Dimauro also summarily argues that excluding this testimony violated his Sixth Amendment rights to cross-examine adverse witnesses. But he has abandoned these arguments by failing to cite to the record or any relevant legal authority in support of his claims.[65] In his two-paragraph argument, he failed to apply any legal authority to the facts of

was aware of "victim's criminal propensities"). *See also supra* notes 18-20 & accompanying text.

[64] OCGA § 24-6-608 (b) provides: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) Concerning the witness's character for truthfulness or untruthfulness; or (2) Concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

[65] Dimauro cites to one case, *Wearry v. Cain*, __ U. S. __ (II) (136 SCt 1002, 1006-07, 194 LE2d 78) (2016), which holds that a the prosecution's failure to disclose material evidence regarding a witness's credibility in violation of *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963), undermined confidence in the conviction. Dimauro, however, has not raised a *Brady* claim here.

*this* case to show that the trial court erred.[66] And it is well settled that "[t]he burden is upon the party alleging error to show it affirmatively by the record[,]"[67] and "[i]t is not the function of this court to cull the record on behalf of a party[.]"[68]

7. Dimauro also argues that the trial court erred in denying his motion to dismiss the indictment because his right to appear before the grand jury was improperly limited. Specifically, he argues that he was entitled to present evidence to the grand jury. Yet again, we disagree.

When Dimauro appeared at the grand jury proceedings to testify, he attempted to present several exhibits as evidence, including the results of administrative proceedings against him, his awards and commendations, a photograph of Davis, and Davis's jail intake forms. After the State refused to allow Dimauro to present this

---

[66] *See Flowers v. State*, 269 Ga. App. 443, 445 (1) (604 SE2d 285) (2004) (noting that "legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts" (punctuation omitted)); *Higgins v. State*, 251 Ga. App. 175, 178 (3) n.3 (554 SE2d 212) (2001) (same).

[67] *Patterson v. State*, 327 Ga. App. 695, 696 (1) (761 SE2d 101) (2014) (punctuation omitted); *accord Orengo v. State*, 339 Ga. App. 117, 123 (4) (793 SE2d 466) (2016).

[68] *Orengo*, 339 Ga. App. at 123 (4); *accord Hicks v. State*, 337 Ga. App. 567, 569 (1) (788 SE2d 502) (2016).

evidence, he filed a motion to dismiss the indictment, which the trial court denied, finding that he had no right to present evidence at the grand jury proceedings.

Under former OCGA § 45-11-4 (g),[69] a police officer charged with a crime occurring in the course of his duties is entitled to notice of grand jury proceedings and may request to appear and "make such sworn statement as he or she shall desire."[70]

---

[69] Former OCGA § 45-11-4 (g) (2014), which was in effect at the time of Dimauro's December 2014 trial, has since been amended and renumbered OCGA § 17-7-52 (e). *See* Ga. L. 2016, pp. 190-93, §§ 6, 8. *Compare* former OCGA § 45-4-11 (g) (2015) ("The accused shall have the right to appear before the grand jury to make such sworn statement as he or she shall desire at the conclusion of the presentation of the state's evidence. The accused shall not be subject to examination, either direct or cross, and shall not have the right individually or through his or her counsel to examine the state's witnesses. The accused and his or her counsel shall have the right to be present during the presentation of all evidence and alleged statements of the accused on the proposed indictment, presentment, or accusation, after which the accused and his or her counsel shall retire instanter from the grand jury room to permit the grand jury to deliberate upon the indictment.") *with* OCGA § 17-7-52 (e) ("After being sworn as a witness but prior to being asked any questions by the prosecuting attorney or the grand jurors, the officer may make such sworn statement as he or she shall desire. The officer's attorney shall not propound questions to the officer nor object to questions propounded to the officer on evidentiary grounds.").

[70] Former OCGA § 45-4-11 (g) (2014); *see State v. Smith*, 286 Ga. 409, 411 (688 SE2d 348) (2010) (holding that former OCGA § 45-4-11 (g) "confers upon the accused the rights to appear before the grand jury to make a sworn statement at the conclusion of the State's evidence"); *see generally Ellis v. State*, 300 Ga. 371, 376-78 (2) (794 SE2d 601) (2016) (discussing former OCGA § 45-11-4).

But former OCGA § 45-4-11 (g) does not define "sworn statement."[71] The question, then, is whether the term "sworn statement" contemplates the introduction of evidence. And as with any question of statutory interpretation, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[72] And toward that end, we must afford the statutory text its plain and ordinary meaning,[73] consider the text contextually,[74] and read the text "in its most natural and reasonable way, as an

---

[71] Although the amended statute is not applicable here, we also note that OCGA § 17-7-52 does not define "sworn statement" either.

[72] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012).

[73] *See Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (citation and punctuation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies[.])").

[74] *See Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same).

ordinary speaker of the English language would."[75] In sum, where the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[76]

Thus, we must consider the meaning of "statement," which is defined as "[a] written or oral communication setting forth facts, arguments, demands, or the like"[77] or "[a] verbal assertion or non-verbal conduct intended as an assertion."[78] Under the plain language of the statute, Dimauro was permitted to communicate with or make a verbal account to the grand jury, including describing the exhibits to the jurors. But nothing in the language of the statutes permits him to present documentary evidence.

---

[75] *Deal*, 294 Ga. at 172-73 (1) (a); *see also Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (same).

[76] *Luangkhot*, 292 Ga. at 424 (1) (punctuation omitted); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.") (punctuation omitted).

[77] THE OXFORD COMPACT ENGLISH DICTIONARY 1889 (2d ed. 1991). *See* OCGA § 1-3-1 (b) (providing that "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter"); *Harris v. State*, 286 Ga. 245, 246 (3) (686 SE2d 777) (2009) (applying same).

[78] BLACK'S LAW DICTIONARY 1629 (10th ed. 2014). *See also supra* note 77.

Accordingly, his right to appear before the grand jury was not improperly limited, and the trial court did not err in denying his motion to dismiss the indictment.

8. In his final claim of error, Dimauro contends that the prosecutor's closing argument was "rife with inappropriate, unethical and universally condemned statements," even though he concedes that his trial counsel raised no objections. Nevertheless, Dimauro argues that the trial court should have *sua sponte* intervened. Once again, we disagree.

OCGA § 17-8-75 provides that when

> counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

But a trial judge has no obligation under OCGA § 17-8-75 to "rebuke a prosecuting attorney or give a curative instruction in the absence of a timely objection."[79] Rather, a defendant who fails to object or request a mistrial on the basis of a prosecutor's comments during argument waives the claim on appeal.[80]

To the extent that Dimauro asserts that trial counsel's failure to object to the prosecutor's comments constituted ineffective assistance of counsel, we note that one of Dimauro's defense attorneys continues to represent him on appeal, and therefore he cannot raise a claim of ineffective assistance of trial counsel.[81]

---

[79] *Powell v. State*, 291 Ga. 743, 746 (2) (a) (733 SE2d 294) (2012); *accord Smith v. State*, 296 Ga. 731, 736 (2) (b) (770 SE2d 610) (2015).

[80] *See Powell*, 291 Ga. at 746 (2) (a) ("[T]he defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal."); *Carr v. State*, 275 Ga. 185, 186 (2) (563 SE2d 850) (2002) ("Inasmuch as appellant did not promptly interpose an objection to the prosecutor's statements or argument or move for a mistrial, he has waived his right to complain on appeal." (citation and punctuation omitted)). See also *Gates v. State*, 298 Ga. 324, 329 (4) (781 SE2d 772) (2016) (concluding that under Georgia's new Evidence Code, plain error review is not available for prosecutor's allegedly improper remarks made during closing argument and argument is waived if remarks are not objected to below).

[81] *See Perkinson v. State*, 279 Ga. 232, 238 (10) (610 SE2d 533) (2005) (holding that where one of defendant's trial lawyers continues to represent him on appeal, claim of ineffective assistance is premature); *Berry v. State*, 262 Ga. 614, 615 (3) (422 SE2d 861) (1992) (same).

Finally, Dimauro argues that the cumulative effect of various errors prejudiced him. But to the extent Dimauro is claiming that the cumulative effect of various errors deprived him of a fair trial, "Georgia does not recognize the cumulative error rule."[82]

For all these reasons, we affirm Dimauro's convictions.

*Judgment affirmed. Ray and Self, JJ., concur.*

---

[82] *Rivers v. State*, 296 Ga. 396, 405 (12) (768 SE2d 486) (2015); *accord Rogers v. State*, 282 Ga. 659, 668 (11) (653 SE2d 31) (2007).